UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00258-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| PAVEL BABICHENKO, PIOTR BABICHENKO, TIMOFEY BABICHENKO, KRISTINA BABICHENKO, DAVID BIBIKOV, ANNA IYERUSALIMETS, and MIKHAIL IYERUSALIMETS, | |
| Defendants. | |

## INTRODUCTION

Before the Court is defendants' motion in limine asking the Court "to preclude the Government and its witnesses from using the term 'counterfeit' to describe the evidence or in any other manner that unfairly prejudices the defense and infringes on the jury's province to make ultimate conclusions of fact." *Def. Br.*, Dkt. 1337, at 1. The government opposes the motion. For the reasons explained below the Court will deny the motion.

## RELEVANT BACKGROUND

Every charge in this case involves counterfeit cellphone or accessories. *See*
*Superseding Indictment*, Dkt. 210, at 10 (count 20 alleges conspiracy to traffic in
counterfeit goods); *id* at 11-16 (counts 21-23, 25, 26, 28, and 30-34 allege discrete
instances of trafficking in counterfeit goods); *id.* at 5 (count 1 alleges conspiracy to
commit wire fraud "by selling . . . counterfeit electronic devices" as authentic); *id.*
at 7-8 (counts 2-9 allege discrete instances of wire fraud involving the sale of
counterfeit devices and accessories); *id.* at 9-10 (counts 11-18 allege discrete
instances of mail fraud involving sending counterfeit devices and accessories
through the United States Postal Service).

At the first trial, the government regularly used the term counterfeit,
including in its opening and closing statements, its examination of trademark
holder representatives Leah Caras and Jim Hogg, and its examination of
cooperating co-conspirator Vadim Dmitruk. In their testimony, the witnesses all
used the term frequently as well.

The defendants objected to the use of the term during the examination and
testimony of both the expert and lay witnesses. The Court overruled those
objections finding that it was impractical "foolishness" to suggest that "no one in
the courtroom can use the word 'counterfeit.'" *Trial Tr*. Day 16 at 2538**.** The Court
reasoned that "it's better to let the words in" and let people "tal[k] the way they

normally talk in in the real world" but to pair that language "with a cautionary instruction to the jury and with an understanding that jurors figure this stuff out." *Id.* at 2538-41. Indeed, the Court offered four cautionary instructions to the jury to clarify "that what an individual thinks is counterfeit or is a factual matter is not conclusive in any fashion, it's for the jury to decide that based on my instructions." *Id.* at 2538; *see also Trial Tr.* Day 15 at 2503-04; *Trial Tr.* Day 16 at 2568; *Trial Tr.* Day 18 at 2980; *Final Instructions*, Dkt. 1159 at 44-45.

The defense called two technical experts who they acknowledged had no trademark expertise. Consequently, the Court held that the experts' testimony was not relevant to the trademark claims. *See Order*, Dkt. 928. The witnesses testified about the functionality and operability of the devices at issue. But the Court excluded any testimony about whether the devices were counterfeit. *Id; see also Trial Tr.*, Day 30 at 5562-63.

The defendants now ask the Court to reconsider its previous rulings. They argue that allowing government counsel and witnesses to repeatedly tell the jury that the phones and devices are counterfeit impinges their constitutional rights.

## LEGAL STANDARD

### A.    Motions in Limine

There is no express authority for motions in limine in either the Federal Rules of Criminal Procedure or the Federal Rules of Evidence. Nevertheless, these

motions are well recognized in practice and by case law. *See, e.g., Ohler v. United States*, 529 U.S. 753, 758 (2000). They key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

Rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler*, 529 U.S. at 758 n.3. Accordingly, at trial, the Court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. at 41 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

### B.    Counterfeit Marks

Trademarks "designat[e] the goods as the product of a particular trader" and "hel[p] consumers identify goods and services that they wish to purchase, as well as those they want to avoid." *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017). 18 U.S.C. § 2320(a) provides that it is a crime to intentionally "traffic[c] in goods or services and knowingly us[e] a counterfeit mark on or in connection with such goods or services." Under § 2320(f)(1)(A)(iv), the term "counterfeit mark" is defined as "a spurious mark . . . the use of which is likely to cause confusion, to cause mistake, or to deceive." "The test for likelihood of confusion is whether a

'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks. *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).[1] *See also United States v. Edwards*, Case No. 16-20070-01/02-CM, 2019 WL 5196614, at *2 (D. Kan. Oct. 15, 2019) ("To summarize, § 2320 criminalizes trafficking in 'counterfeit good.' But a good need not necessarily be non-genuine to be a 'counterfeit good.' To be a 'counterfeit good' requires only that the combination of a particular good and mark result in a product likely to leave consumers deceived, confused, or mistaken as to the good's actual origin or quality.").

## ANALYSIS

The law defines "counterfeit mark" with particularity. A mark is counterfeit if a reasonably prudent consumer would likely be confused about the origin of a particular good because the mark is attached to it. A factfinder thus concludes that

---

[1] Although *Dreamwerks* dealt with the definition of counterfeit in Lantham Act, it is equally applicable here. "The definition of the term 'counterfeit mark' in the Lanham Act is nearly identical to the definition in section 2320, suggesting that Congress intended to criminalize all of the conduct for which an individual may be civilly liable." *United States v. Petrosian*, 126 F.3d 1232, 1234 (9th Cir. 1997). *See also Joint Statement on Trademark Counterfeiting Legislation*, 130 Cong. Rec. 31,673, 31,675 (1984) (chief House and Senate sponsors of the Trademark Counterfeiting Act explaining that "likely 'to cause confusion, to cause mistake, or to deceive,' . . . is the key phrase in the remedial section of the Lanham Act . . . and its inclusion here is intended to ensure that no conduct will be criminalized by this act that does not constitute trademark infringement under the Lanham Act.").

a mark is counterfeit by considering the relationship between mark and the good to determine the likelihood of confusion.

One issue in this case is defining the goods that the jury should consider in making the counterfeit determination. The following hypothetical illustrates the differences in the parties' positions. Suppose Jane wants a new iPhone, so she goes to the Apple store to buy one directly from the trademark holder. Unfortunately for Jane, the only phones in stock have orange backplates, her least favorite color. Jane buys the phone and goes directly across the street to a third-party retailer. The retailer removes the original orange backplate with a genuine mark and affixes a blue one, which the third-party made in-house and which bears non-genuine marks. Jane then changes her mind about being an iPhone user altogether and sells the phone as an authentic iPhone on eBay. Has Jane trafficked in counterfeit goods?

The defense's theory would say no, because the "phone" is distinguishable from the "backplate." The fake mark indicates a genuine product, which the device is, notwithstanding the new backplate. But the government's theory would suggest that Jane has trafficked in counterfeit goods, because the fake mark would indicate to the reasonable consumer that every part of the phone is genuine, but in fact the backplate is not.

The broad legal question is whether a mark is counterfeit if it is likely to

cause confusion to consumers about the origins of some, but not all, parts of an electronic device. Whether or not a mark is likely to cause confusion is a factual question for the jury to decide. Fortunately, the Court does not need to resolve the more difficult issue—whether it is a factual or legal question if the "good" is the entire electronic device or only certain component parts—at this juncture.

For the purposes of this motion, the Court merely wishes to highlight the complexity of the issues the jury will encounter. Determining whether the marks are counterfeit—and thus violate § 2320—is more complicated than finding that they are inauthentic.

The government's trademark experts can testify about whether the marks were made by the trademark holder. At the first trial, the experts basically testified that the marks at issue in this case varied from the marks that the trademark holders make and place on their products, and do so in a variety of ways – some subtle and some obvious. According to their testimony, the marks are fake. This testimony is undoubtably critical to the jury's overall counterfeit analysis. But, as discussed above, a fake mark is not *per se* a counterfeit one.

At the first trial, the Court allowed government witnesses to describe the evidence as counterfeit while instructing the jury that the term "can mean a number of different things" colloquially that are different than the legal definition. *Trial*

*Tr.*, Day 15 at 2503. In essence, the Court allowed the witnesses to use the practical, everyday meaning of counterfeit—a synonym for non-genuine—with the understanding that the instructions would clarify the issue for the jury later.

The Court is not persuaded that this approach violated defendants' constitutional rights. Allowing the jury to hear the testimony coupled with cautionary instructions was an appropriate exercise of the Court's "wide discretion" in these matters. *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) (A trial judge is the "governor of the trial" and enjoys "wide discretion in the matter of charging the jury.").

Nevertheless, because the counterfeit determination requires complex analysis of a sometimes slippery concept, the term should be used sparingly. Counsel and witnesses should be comfortable using synonyms, such as non-genuine, inauthentic, fake, not real, knock-off, etc. But the Court will not order a ban on the term at trial. That would be both impractical and awkward. The reality is that the word "counterfeit" will inevitably slip in, either as an intrinsic part of the evidence or because it is part of witnesses' natural vocabulary. And any effort to carefully parse a witness's statements to avoid using the term will be counter-productive and only highlight it to the jury. The Court will, from time to time, offer a cautionary instruction, which it finds is more than adequate to prevent prejudice

to the defendants.

## ORDER

1.    The defendants' motion in limine (Dkt. 1337) is DENIED.

DATED: May 3, 2022

B. Lynn Winmill
U.S. District Court Judge