Ellen Smith, ISB. 5992
**SMITH HORRAS, P.A.**
5561 N. Glenwood St. Suite B
Boise, ID  83714
Telephone:  (208) 697-5555
Facsimile:   (800) 881-6219
ellen@smithhorras.com

Craig Durham, ISB 6428
**FERGUSON DURHAM, PLLC**
223 N. 6th Street, Suite 325
Boise ID 83702
Telephone: (208) 724-2617
Facsimile: (208) 806-9663
chd@fergusondurham.com

Attorneys for MIKHAIL IYERUSALIMETS

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  Plaintiff<br>  vs<br><br>PAVEL BABICHENKO, PIOTR BABICHENKO, TIMOFEY BABICHENKO, DAVID BIBIKOV, and MIKHAIL IYERUSALIMETS,<br><br>  Defendants. | Case No.: 1:18-CR-258-BLW-9<br><br>**MIKHAIL IYERUSALIMETS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE** |

**INTRODUCTION**

The Government seeks a preliminary order of forfeiture against Defendant Mikhail Iyerusalimets. Dkt. 1644. The Government's request sweeps far too broadly. First, the Court should limit forfeitable proceeds to ill-gotten profit rather than gross receipts from all Amazon deposits. Next, regardless of whether it looks at the net or the gross, the Court should deduct a significant portion as non-forfeitable, untainted property, based on deposits that were either attributable to Anna's business activities or were tied to goods that were neither counterfeit nor fraudulently sold. Finally, a judgment in the amount that the Government seeks would be an excessive fine against Mr. Iyerusalimets, violating his rights under the Eighth Amendment. Mr. Iyerusalimets also objects to the Government's motion seeking a personal money judgment against him to preserve that issue for further review.

**GENERAL LEGAL FRAMEWORK**

Criminal forfeiture is part of the defendant's sentence. *E.g.*, *United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) (abrogated on other grounds by *Honeycutt v. United States*, 137 S.Ct. 1626, 1632 (2017)). The Government may seek forfeiture when a criminal statute expressly authorizes it, or, under 28 U.S.C. § 2461(c), "whenever civil forfeiture is available and the defendant is found guilty of the offense." *Newman*, 659 F.3d at 1239. In other words, if the Government is authorized to forfeit property under civil statutes, it can also do so in a criminal matter.

In all cases, the Government has a burden to show, by a preponderance of the evidence, a nexus between the crime and the property that it seeks to forfeit. *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011). This Court has previously adopted a "but for" test for proving nexus: the Government must show that the defendant would not have obtained the property but for his or her illegal activity. *United States v. Martin*, 2014 WL 221956, *4 (D. Idaho).

### A. Trafficking in Counterfeit Goods

The intellectual property crimes section in the United States Code includes a provision specifically authorizing forfeiture. It permits forfeiture of (1) any "article, the making or trafficking of which is prohibited" by intellectual property law; (2) any property "used, or intended to be used, in any manner or part to commit or facilitate" the crime; and (3) any "proceeds," or property derived from the proceeds, of the crime. 18 U.S.C. § 2323(a)(1) and § 2323(b)(1). That is – the defendant must forfeit the counterfeit items themselves, any property that "facilitated" the crime, and all "proceeds" from the crime.

This statute refers to and generally incorporates the forfeiture procedures for drug crime convictions set out in 21 U.S.C. § 853, excluding subsection (d). *See* 18 U.S.C. § 2323(b)(2)(A).

B. **Mail and Wire Fraud**

The mail and wire fraud criminal statutes do *not* include specific forfeiture provisions. But because Congress enacted a civil forfeiture regime that includes mail and wire fraud, *see* 18 U.S.C. § 981(a)(1)(C), the Government may rely on that section to seek criminal forfeiture. 28 U.S.C. § 2461(c). [1]

Under 18 U.S.C. § 981(a)(2), the Government can seek an order forfeiting "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the mail or wire fraud.

## "PROCEEDS" MEANS NET RATHER THAN GROSS

The Government argues that the forfeitable "proceeds" in this case are gross receipts, as shown primarily by Amazon deposits. Dkt. 1644, p. 7. For Mr. Iyerusalimets, the Government claims that means he owes $4,183,572.55. *Id*. at 29. It seeks a money judgment in that amount against him. *Id*. The Government reaches too far; the "proceeds" in this case must exclude the direct costs that Mr. Iyerusalimets incurred in providing these goods.

In *United States v. Santos*, a money laundering case, the Supreme Court recognized that the word "proceeds" as used in the criminal code is usually not defined

---

[1] Mail and wire fraud are "specified unlawful activit[ies]" referred to in 18 U.S.C. § 1956(c)(7) that make the forfeiture provisions of § 1981(a)(1)(C) applicable to these crimes. *See, e.g., United States v. Lo*, 839 F.3d 777 n.6 (9th Cir. 2016).

and is therefore ambiguous. 553 U.S. 507, 511 (2008). In common usage, "proceeds" can mean either something like "receipts" or "profits." *Id*. Applying the rule of lenity, the *Santos* Court construed "proceeds" narrowly for purposes of the money laundering statute to mean "profits." *See id*. at 514 ("[b]ecause the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted."). Congress later amended the money laundering statute to encompass gross receipts, *see* 18 U.S.C. § 1956(c)(9), but the Supreme Court's explication in *Santos* of the ambiguity inherent in the word "proceeds" should be well-taken.

The intellectual property forfeiture provisions on which the Government relies in part do not further define "proceeds." 18 U.S.C. § 2323(a)(1). As in *Santos*, the word is inherently ambiguous. But the forfeiture provisions in 18 U.S.C. § 981(a)(2), on which the Government also relies, *do* include a definition. Dkt. 1644, p. 7. There, forfeitable "proceeds" can mean either the defendant's gross receipts or something like net profit, depending on the nature of the goods or services and how the defendant provided them. 18 U.S.C. § 981(a)(2)(A),(B).

More precisely, in cases involving "illegal goods, illegal services, [and] unlawful activities ..." forfeitable "proceeds" are "not limited to the net gain or profit realized by the offense." 18 U.S.C. § 1981(a)(2)(A). In those circumstances, forfeiture is measured by gross receipts.

5

But in cases "involving lawful goods or lawful services *that are sold or provided in an illegal manner*," the defendant must forfeit only the "money acquired through the illegal transactions, less the direct costs incurred in providing the goods or services." 18 U.S.C. 1981(a)(2)(B).

Mr. Iyerusalimets is unaware of Ninth Circuit case law that squarely addresses when one of these subsections applies instead of the other. Other circuits have spoken, however. In *United States v. Nacchio*, 573 F.3d 1062, 1090 (10th Cir. 2009), the Tenth Circuit held that the sale of stock in an insider trading case involved a "lawful good" – stock – that was sold in an "unlawful manner" – with insider knowledge. As such, the definition of "net proceeds" in § 981(a)(2)(B) applied. *Accord United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) (insider trading). In *United States v. Hasan*, 718 F.3d 338, 345-56 (4th Cir. 2013), a contraband cigarette case, the Fourth Circuit held that contraband cigarettes were "illegal goods" by their very nature because merely possessing them was unlawful. *See id.* at 346("[c]ontraband cigarettes could never be sold lawfully because it is possession of the defined item itself that violates the CCTA.").

The courts that have addressed these subsections have applied a rule that § 981(a)(2)(A) applies when the illegality of the goods, services, or activities are inherent in their very nature, like drug dealing, embezzlement, or robbery. It would make no sense, for example, for someone who traffics in methamphetamine to be able to deduct

6

his cost of doing business. That person's entire business model is unlawful. On the other hand, § 981(a)(2)(B) applies to goods, services, or activities that are generally lawful but are provided in an unlawful manner. These are people who typically have a lawful business model but sell their goods or services through fraud. A stockbroker who sells a lawful investment vehicle but does so based on fraudulent misrepresentations will get an offset for his direct business costs.

That is how this Court understood it in *United States v. Martin*, 2014 WL 221956 (D. Idaho, 2014). There, it concluded that the defendant provided lawful goods (highway guardrails and barriers) in an unlawful manner (by false pretenses) to gain government contracts. *Id*. at *5. This Court took a similar approach in *United States v. Swenson*, 2014 WL 3748301 (D. Idaho 2014), where it determined that the defendant's fraudulent misrepresentations regarding his company's success, profitability, and net worth as a means of selling investment products involved the selling of legal goods in an unlawful manner. *Id*. at * 5. In both of those cases, the defendants were not held liable for their businesses' gross receipts.

That principle should apply here. At worst, Mr. Iyerusalimets sold lawful goods in an unlawful manner. Unlike a drug dealer, he had lawful businesses registered with the secretary of state in his name. Nor is this a case where consumers received nothing of value in exchange for their money, like the fly-by-night fraudster who goes from town to town. Mr. Iyerusalimets' businesses sold working electronic devices, the

overwhelming majority of which functioned as intended. If they were chargers, they worked as chargers. If they were phones, they worked as phones.[2]

To the extent that the jury's verdict encompasses a finding that Mr. Iyerusalimets engaged in a scheme to sell used items as new, that does not make the goods themselves unlawful. Nor does the fact that the jury found that the goods bore counterfeit marks change the analysis. Unlike in *Hasan*, where possessing contraband cigarettes was illegal, possessing a working phone or charger with an allegedly counterfeit mark is not inherently unlawful. Mr. Iyerusalimets' situation is therefore closer to the woman in *Martin* who lied to the government about her status to snare contracts to sell highway guard rails, or to investment brokers who encouraged consumers to buy real investment products based on material misrepresentations, than to the drug dealer or bank robber.

The Government does not engage with § 981(a)(2)(B) in its briefing. It instead relies on a broad interpretation of "proceeds" derived from *United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021). Dkt. 1644, p. 7. *Prasad* construed a different statutory provision, 18 U.S.C. § 1982(a)(6)(A)(ii)(I), which applies to defendants convicted of visa fraud. *Id*.

---

[2] The Government did present testimony from a few witnesses who claimed in isolated instances that chargers and one phone malfunctioned. None of those products were sold by Mr. Iyerusalimets and, regardless, they represent a tiny fraction of the overall goods that were sold.

8

at 315, 319-21. It had no occasion to address the interplay between 18 U.S.C. § 1981(a)(2)(A) and (B). *Prasad* is inapposite.

For these reasons, forfeitable proceeds are "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods." 18 U.S.C. § 981(a)(2)(B).

## THE GOVERNMENT HAS FAILED TO SHOW A NEXUS BETWEEN THE CRIME AND ALL THE PROPERTY THAT IT SEEKS

The Government must prove a connection between the crime and the property it seeks to forfeit. *Liquidators of Eur. Fed. Credit Bank*, 630 F.3d at 1149. That means that the Government must show that Mr. Iyerusalimets would not have obtained the property that it seeks to forfeit but for his illegal activity. *See Martin*, 2014 WL 221956, at *4. The foundation of criminal forfeiture law is the notion that it should be limited to "tainted property." *Cf. Honeycutt*, 137 S.Ct. at 1632 (construing § 853 to find that "[t]hese provisions, by their terms, limit forfeiture under § 853 to tainted property; that is, property flowing from ... or used in ... the crime itself.").

In seeking a monetary judgment against Mr. Iyerusalimets, however, the Government relies on all Amazon deposits for all businesses between 2013 and 2018, for a total of $4,183,572.55. Dkt. 1644, p. 29. In doing so, the Government claims that every aspect of the Amazon businesses and the entirety of these funds are forfeitable. *Id*. Mr. Iyerusalimets disagrees. Criminal forfeiture is part of *his* punishment in this case and

9

should be linked to tainted funds. The Government cannot carry its burden to prove a nexus between the jury's finding of his criminal activity and all of those funds.

As an initial matter, a significant part of the Amazon deposits was from Anna Iyerusalimets' activities, businesses, and bank accounts. As the Court is aware, Anna was acquitted. Accounts and businesses solely in her name included the Amazon deposits include Droid Masterz ($288,126.78), Star KS ($97,305.74), and AIMEO ($6,431.06). Gov. Ex. 1251- 002. The total of $391,863.58 should be deducted from the forfeitable amount. *See* Gov. Ex. 1251-006. Anna was also listed with Mikhail on the accounts for Cell Zone, LLC ($1,590,345.41) and Mountain Wireless Distributing ($392,753.31). *Id*. Some portion of those totals should also be offset as a result of what the jury found to be Anna's non-criminal participation in those shared businesses. The Government also wants to double-dip from Mr. Iyerusalimets and Piotr Babichenko. It seeks deposits from Rubiks Cube from both Mr. Iyerusalimets ($615,224.74) and Piotr ($136,652.62). Gov. Ex. 1251-004; Gov. Ex. 1255-003.

In addition, while the Government relies on bank records for the total deposits into bank accounts related to a dozen Amazon businesses over five years, it produced the business records for only two of Mr. Iyerusalimets' Amazon businesses – Mobile Rack and Simplified Selling – and those records spanned only three years, from 2015-2018. Gov. Ex. 1502. This is insufficient to prove a criminal nexus to the entirety of the Amazon deposits for the years covered.

Mr. Iyerusalimets' business path is unlike the other convicted defendants in this case. He started small, selling refurbished and generic phones that others did not want to sell, and he never achieved the success that the Babichenko brothers saw. He also fixed broken phones and sold those. A good portion of his sales on online platforms, especially in the early years, were genuine and non-fraudulent. And, after his inventory was robbed in 2017, he was forced to go back into the construction business. The FBI even found some devices in the Anatole home that the trademark experts later found to be genuine.

In short, the Government cannot prove a criminal nexus between all Amazon receipts for twelve businesses over five years and fraud or trafficking in counterfeit goods.[3]

---

[3] The Government devotes a few sentences in its brief to support a broad claim that every genuine product that Mr. Iyerusalimets ever sold on Amazon was done to facilitate a fraudulent scheme. It points to off-hand statements that Mr. Iyerusalimets made during the Dmitruk undercover buy to the effect of building a sales record through inexpensive and generic items. Dkt. 1644, pp. 28-29.

That is far too slim a reed on which to rest the entirety of these deposits. Given the evidence noted above, the better view is that Mr. Iyerusalimets was discussing how hard it was to sell online generally and how one strategy was to sell inexpensive or generic products simply to gain a foothold in a cutthroat marketplace. That comment cannot be the sole basis to taint every genuine product sold as part of some larger fraud.

# THE AMOUNT THE GOVERNMENT SEEKS WOULD BE AN EXCESSIVE FINE PROHIBITED BY THE EIGHTH AMENDMENT

The Eighth Amendment prohibits the imposition of "excessive fines." U.S. CONST. AMEND. VIII. That provision "limits the Government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Forfeitures are fines subject to Eighth Amendment scrutiny if they constitute punishment for an offense. *Id*. A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense." *Id*. at 334. The Court is guided by the following factors: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1121–22 (9th Cir. 2004) (citing *Bajakajian*, 524 U.S. at 337–40).

Here, a money judgment of over four million dollars again Mr. Iyerusalimets, together with the forfeiture of the specific assets listed, would be excessively punitive under the Eight Amendment.

The Government argues that the nature of the fraud in this case was widespread and long-lasting. Even if that is true, Mr. Iyerusalimets' role was mitigated. He arrived late, was not very successful, and then moved into construction toward the end. The overall numbers are undisputedly large. But, for many of the same reasons set out,

above, they are misleading. Over four million dollars in receipts does not truly represent Mr. Iyerusalimets' ill-gotten gains. Far from it. Mr. Iyerusalimets' margins were thin and his profits were small. Most of the revenue from these businesses went to pay for supplies and overhead. Mr. Iyerusalimets married into the family and followed the lead of the Babichenko brothers. Even Piotr candidly explained on the witness stand that Mikhail was not a good businessman. The consumers that were deceived received at least some value, typically in the form of a functional device, for their money. Relatively few complained.

The maximum fine for mail and wire fraud is $250,000. 18 U.S.C. §§ 1343, 1349. The maximum fine for trafficking in counterfeit goods is $5,000,000. 18 U.S.C. § 2320(b)(1). Imposing a fine that exceeds the mail and wire fraud maximum multiple times over, and approaching the maximum penalty for trafficking in counterfeit goods, is a grossly disproportionate punishment as to Mr. Iyerusalimets. By all accounts, he is a well-liked, well-meaning, and kind-hearted person and employer. He has a large family that lives frugally. It is simply unnecessary to saddle Mr. Iyerusalimets and his family with a crushing debt that can probably never be repaid, leaving them near-destitute, to punish him for his involvement in this offense. The Court should find that the request would violate the Eighth Amendment and reduce it accordingly.

# THE GOVERNMENT CANNOT RECEIVE A MONEY JUDGMENT AGAINST MR. IYERUSALIMETS PERSONALLY

Mr. Iyerusalimets contends that the Government cannot recoup a money judgment as part of this criminal forfeiture regime. As the Supreme Court explained in *Honeycutt v. United States*, the essence of criminal forfeiture is the disgorgement of ill-gotten and tainted funds. 137 S.Ct. at 1632. Under that theory, the focus is on the property, not the individual. *Id*. If an individual has not obtained the tainted property, the Government should not be permitted to forfeit an equal amount from him. *Id*. at 1632-33.

Mr. Iyerusalimets concedes that the law as it currently stands in the Ninth Circuit is contrary to his argument, and that this Court must follow the Ninth Circuit's precedent. *See*, *e.g.*, *United States v. Nejab*, 933 F.3d 1162, 1165-66 (9th Cir. 2019) ("we see nothing in *Honeycutt* (or any other recent Supreme Court decision) that would allow us to overrule our prior precedent permitting entry of a personal money judgment in the circumstances."). He raises the issue to preserve it for further review.

Respectfully submitted on this 18th day of November, 2022.

/s/Craig H. Durham
/s/Ellen Smith

Attorneys for Mikhail Iyerusalimets

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November, 2022, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Katherine L. Horwitz
    Christian S. Nafzger
    Justin Whatcott
    Joshua D. Hurwit

    Assistant United States Attorneys
    Office of the United States Attorney
    1290 West Myrtle Street, Ste. 500
    Boise, ID 83702
    Kate.Horwitz@usdoj.gov
    Christian.Nafzger@usdoj.gov
    justin.whatcott@usdoj.gov
    joshua.hurwit@usdoj.gov
    *Attorneys for the United States*

    John DeFranco
    1031 E. Park Blvd.
    Boise, ID 83712
    jcd@greyhawklaw.com

    Barry Flegenheimer
    119 First Ave. S., Ste. 500
    Seattle, WA 98155
    barrylfp@gmail.com
    *Attorneys for Pavel Babichenko*

    Jeff Brownson
    223 North 6th St., Ste. 215
    Boise, ID 83702
    jb@jeffreybrownsonlaw.com
    *Attorney for Gennady Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com

*Attorneys for Timofey Babichenko*

Jay J. Kiiha
5700 East Franklin Road, Ste. 200
Nampa, ID 83687
jkiiha@whitepeterson.com
*Attorneys for Kristina Babichenko*

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702 jmerris@earthlink.net
*Attorney for Natalya Babichenko*

Robyn A. Fyffe
P.O. Box 5681
Boise, ID 83705
robyn@fyffelaw.com
Brian Pugh
411 E. Bonneville Ave.
Las Vegas, NV 89101 brian_pugh@fd.org
*Attorneys for David Bibikov*

Melissa Winberg
Nicole Owens
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
melissa_winberg@fd.org
nicole_owens@fd.org

*Attorneys for Anna Iyerusalimets*

Thomas B. Dominick
500 W. Bannock Street
Boise, Idaho 83702
tom@dominicklawoffices.com
*Attorney for Artur Pupko*

/s/ Craig H. Durham