Barry L. Flegenheimer
Washington State Bar No. 11024
Bell Flegenheimer
119 First Avenue South, Suite 500, Seattle, WA 98104
(206) 621-8777
barrylfp@gmail.com

John C. DeFranco
Idaho State Bar No. 4953
Ellsworth, Kallas & DeFranco, PLLC
1031 E. Park Blvd., Boise, ID 83712
(208) 336-1843
jcd@greyhawklaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV,<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | CASE NO. CR-18-00258-BLW<br><br>DECLARATION OF CHRISTOPHER LINSCOTT, CPA, CFE, CIRA |

I, Christopher Linscott, declare as follows:

I am over the age of eighteen years old and am competent to give this Declaration. I have personal knowledge of the facts set forth herein and, if called to testify, I would competently testify to those facts.

I am a Certified Fraud Examiner, Certified Insolvency and Restructuring Advisor and Certified Public Accountant. I hold a Bachelor of Arts in Psychology from Amherst

College and Master of Science in Accounting from New York University. I have been a Certified Public Accountant since 1984.

Since 1994, I have been the owner and director of a Certified Public Accounting firm, Keegan Linscott & Associates, PC. The firm currently has about 36 employees made up of 6 administrative staff and 30 individuals who are involved in providing accounting services. The firm has an office in Tucson, Arizona. For the firm, I am the head of bankruptcy and reorganization, litigation support and forensic accounting. I have provided financial, forensic accounting and expert services in fraud, bankruptcy and restructuring, and criminal matters. I have prepared expert reports, disclosures and testified in federal and state jurisdictions. In criminal cases, I have provided expert services for both the prosecution and defense. My CV is attached as Exhibit 5.

In this matter, I have reviewed bank records, underlying accounts documents, corporate records, revenue detail and other information.

For this declaration I have been asked to perform analyses related to the Government's Motion for Preliminary Order of Forfeiture. Defendants' counsel for Michael Iyerusalimets, Tim Babichenko, Peter Babichenko and Paul Babichenko have asked me to perform certain calculations that the Government has not considered and that would potentially offset forfeiture amounts claimed by the Government.

The following is a summary of the calculations I have been asked to perform.

1. **Duplicate Revenues**

The Government seeks a money judgment for each defendant based on total Amazon deposits as calculated by Linda Czemerys. In her analysis, Linda Czemerys credits the full amount of all Amazon deposits into each defendants' bank account [Linda

Czemerys Government's Trial Exhibits 1250 to 1253 and 1255 to 1257]. In addition, Linda Czemerys includes amounts Paul Babichenko received from the other named defendants (Michael, Tim, and Peter) as Amazon deposits [Linda Czemerys Excel file "Supporting_1250"]. In effect, Linda Czemerys has double counted the same Amazon sales; first, in the bank account deposits for Michael, Tim, and Peter; and second when she also counts the transfers from those defendants to Paul Babichenko.

I have eliminated the double counting of sales by removing the deposits attributed to Paul from Michael Iyerusalimets, Tim Babichenko, and Peter Babichenko's total Amazon deposits per the Government. See Exhibit 1. The amounts identified for elimination represent deposits in Paul Babichenko's accounts from the other named defendants as summarized in Linda Czemerys supporting work papers disclosed for Government's Trial Exhibit 1250-005.

2. **Product Mix**

The total Amazon deposits the Government claims were received by the defendants includes deposits from Amazon sales for both Samsung and Apple products and other products unrelated to the Government's allegations.

I analyzed the Amazon records produced on September 17, 2018, and on February 17, 2022, to evaluate the mix of products being sold [Bates BABICHENKO-265277, BABICHENKO-347241, BABICHENKO-347245, BABICHENKO-347246 and BABICHENKO-347247]. The Amazon records produced included sales transaction detail for the Amazon accounts held by the named defendants, Artur Pupko and four other individuals. The Amazon records analyzed consisted of approximately 540,000 transactions and $43 million in sales covering years 2012 to 2018. We analyzed the

Amazon records for the parties collectively as a group, given not all the defendants' Amazon account records have been produced and considering the business transactions amongst defendants and commissioned agents. I believe this to be more representative of the overall business structure.

I categorized Amazon sales by product brand and year. See Exhibit 2. The deposits on sales related to other products unrelated to the Government's allegations were significant in 2012 and 2013, representing 86.9% and 54.5% of total sales, respectively. For the years 2014 to 2018, deposits from sales for the products unrelated to the Government's allegations, ranged from 8.5% to 23.7%. On an overall basis, from 2012 to 2018, deposits from sales unrelated to the Government's allegations averaged 14.3%.

3. **Proceeds**

The Government's request for money judgments is based on total "Gross" Amazon deposits made into the defendants' bank accounts. However, the defendants did not receive the full benefit of the Amazon funds deposited into their accounts as they had costs associated with the products they sold. Expenses included direct costs, such as the cost of the product sold and shipping costs, as well as operating expenses.

I analyzed the defendants' (Michael, Tim, Peter and Paul) bank records for 2012 to 2018 that approximate the accounts analyzed by Linda Czemerys [per Government's Trial Exhibits 1250 to 1253 and 1255 to 1257] collectively to identify associated costs (i.e. product costs, shipping, etc.) that were incurred in generating the Amazon sales as I believe it provides a better representation of the overall activity given the business transactions that occurred between defendants. For example, at different time periods some of the

defendants may have earned revenues in the capacity of a commissioned agent, in which case the cost of goods sold may not have flowed through their bank account.

My calculation of net proceeds is summarized at Exhibit 3. As part of the analysis, I analyzed the bank records of the defendants and categorized the cash inflows and outflows. I first identified revenues; including revenues received from Amazon, PayPal and commissioned contractors. I then categorized cash outflows based on the type of expenditure, such as cost of goods sold, operating expense, personal, etc.

Cost of Goods Sold: Cost of goods sold includes the costs of all items that are directly or indirectly associated with the production or purchase of goods that have been sold. The bulk of the products sold by defendants were products purchased from other countries, therefore I have assumed that all foreign wires, except for wires to Brazil, represent the cost of goods sold. For consistency, the cost of goods sold amount used in the calculation of net proceeds at Exhibit 3 is based on amounts reported by Linda Czemerys in her Government Trial Exhibits 1259 to 1262, which is a summary of foreign wires made by each defendant.

Shipping Costs: Another direct cost is the cost of shipping the product. I estimated the cost of shipping as a percentage of revenues to be 6%. The shipping costs were estimated by taking the average cost to ship a parcel divided by the average price of the products sold. To determine the average cost to ship a parcel I analyzed the United States Postal Service historical shipping rates for various package types and delivery services for years 2012 to 2020, which we calculated to be $4.90 [see Exhibit 3.1 for rate calculation and authoritative cite]. I then calculated the average price of products sold by defendants and Artur Pupko through their Amazon

accounts to be $78.86 by dividing total sales by the quantity sold [Amazon records - bates BABICHENKO-265277, BABICHENKO-347241, BABICHENKO-347245, BABICHENKO-347246 and BABICHENKO-347247].

Other Direct Costs: Based on my analysis there would be additional direct costs related to the business operations, such as payroll, space, and utility costs. However, based on the limited financial records available I am unable to identify those costs at this time, and have excluded additional direct costs from the analysis.

Operating Expenses: The defendants also had operating expenses related to the products they sold. Operating expenses would include, but would not be limited to, payroll, office expenses, utilities, and insurance. Based on the analysis of the defendant's bank records, I calculated operating expenses to be approximately 17% of total revenue, see Exhibit 3.

As shown in Exhibit 3, the cost of goods sold and shipping costs were calculated to be 68% and 6% of total revenues, respectively. Therefore, after deducting direct costs, the defendants gross margin was 26% of total revenues collected. In addition, the defendants' operating expenses were calculated to be 17% of total revenues, which means their net profit margin would be approximately 9% of total revenues. The benefit received by the defendants would be the 9% net profit margin, or at most the 26% gross margin, not the entirety of the gross sales proceeds. Exhibit 4 is the calculation of Amazon deposits after adjustments discussed above.

To the extent additional detailed analysis is needed for specific defendants I can provide that as needed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 3, 2023.

_____
Christopher G. Linscott, CPA, CFE, CIRA

EXHIBIT 1

**U.S. v. Babichenko, et al.**
Commission Sales Analysis - Duplicates
Exhibit 1

| Name | Amazon Deposits per Gov't | Less: Amazon Deposits Ascribed to Paul [1] | Amazon Deposits Less Commission Based Sales |
|---|---|---|---|
| Michael Iyerusalimets | $ 4,183,573 | $ (1,639,584) | $ 2,543,988 |
| Tim Babichenko | $ 11,004,926 | $ (1,090,644) | $ 9,914,282 |
| Peter Babichenko | $ 4,361,502 | $ (798,793) | $ 3,562,710 |
| Paul Babichenko | $ 36,206,982 | $ - | $ 36,206,982 |

Notes
[1] Source: Excel file called "Supporting_1250", tabs "P & N Amazon Deposits" and "Midstar Amazon Dep", disclosed by the government as support for Exhibit 1250-005.

EXHIBIT 2

U.S. v. Babichenko, et al.
Amazon Sales Summary - Product Mix
Exhibit 2

| | Make | TOTAL SALES ($) | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | Total |
| | Apple | $ 16,028 | $ 210,701 | $ 1,495,444 | $ 1,643,618 | $ 1,417,870 | $ 2,195,069 | $ 2,220,187 | $ 9,198,918 |
| | Samsung | $ 31,353 | $ 461,449 | $ 2,782,995 | $ 4,185,108 | $ 3,119,853 | $ 8,533,633 | $ 8,836,777 | $ 27,951,169 |
| [1] | Other Brands | $ 314,624 | $ 806,591 | $ 1,327,388 | $ 662,297 | $ 891,583 | $ 1,153,549 | $ 1,033,455 | $ 6,189,487 |
| | TOTAL SALES ($) | $ 362,005 | $ 1,478,741 | $ 5,605,827 | $ 6,491,023 | $ 5,429,306 | $ 11,882,252 | $ 12,090,419 | $ 43,339,574 |
| | Apple - % of Total | 4.4% | 14.2% | 26.7% | 25.3% | 26.1% | 18.5% | 18.4% | 21.2% |
| | Samsung - % of Total | 8.7% | 31.2% | 49.6% | 64.5% | 57.5% | 71.8% | 73.1% | 64.5% |
| | Other - % of Total | 86.9% | 54.5% | 23.7% | 10.2% | 16.4% | 9.7% | 8.5% | 14.3% |

**Notes**

Source: Amazon records discovery produced on February 17, 2022 [Bates BABICHENKO-347241, BABICHENKO-347245, BABICHENKO-347246 and BABICHENKO-347247] and discovery produced on September 17, 2018 [BABICHENKO-265277]

[1] "Other Brands" means brands sold other than Apple and Samsung (such as Blackberry, HTC, LG, Motorola, Nokia and Otterbox)

EXHIBIT 3

**U.S. v. Babichenko, et al.**
Summary of Net Proceeds
Exhibit 3

|     |                     | Total          | %     |
|-----|---------------------|---------------:|------:|
| [1] | Revenue             | $ 66,234,958   | *100%* |
|     | Less Direct Costs:  |                |       |
| [2] | Cost of Goods Sold  | (44,839,892)   | *(68%)* |
| [3] | Shipping Costs      | (3,974,097)    | *(6%)* |
|     | **Gross Margin**    | **$ 17,420,969** | ***26%*** |
|     |                     |                |       |
| [1] | Operating Expenses  | $ (11,289,605) | *(17%)* |
|     | **Net Profit**      | **$ 6,131,364** | ***9%*** |

Notes

[1] Source: Revenue and operating expenses were identified through an analysis of the 2012 to 2018 bank statements and supporting documents for all defendants bank accounts (excluding David Bibikov) which approximates the analysis by governments expert, Linda Czemerys on Exhibits 1250 to 1253 and 1255 to 1257.

[2] Cost of goods sold is the sum of foreign wires made by defendants, Michael, Tim, Peter and Paul, excluding wires to Brazil. Source: Linda Czemerys Exhibits 1259 to 1262.

[3] Shipping costs are estimated to be 6% of total revenue. Based on a cost of $4.90 per package divided by the average sale price per product of $78.86. *Source for Shipping Costs*: analysis of the average (2012 - 2018) USPS rates for various classes to various locations as of 1.26.20 (prior year rates adjusted for inflation based on historical rates), see Exhibit 3.1. *Source for Average Product Sale Price*: analysis of Amazon records discovery produced on on September 17, 2018 and February 17, 2022, total product sales $ divided by total count of products sold [bates BABICHENKO-265277, BABICHENKO-347241, BABICHENKO-347245, BABICHENKO-347246 and BABICHENKO-347247].



EXHIBIT 4

**U.S. v. Babichenko, et al.**
Calculation of Amazon Deposits After Adjustments
Exhibit 4

| Amazon Deposits | Michael Iyerusalimets | Tim Babichenko | Peter Babichenko | Paul Babichenko |
|---|---:|---:|---:|---:|
| Amazon Deposits (per Gov't) | $ 4,183,573 | $ 11,004,926 | $ 4,361,502 | $ 36,206,982 |
| Less: Duplicates | (1,639,584) | (1,090,644) | (798,793) | - |
| Total Amazon Deposits | $ 2,543,988 | $ 9,914,282 | $ 3,562,710 | $ 36,206,982 |
| Less: Non-Indicted Brands (14.3%) | (363,790) | (1,417,742) | (509,467) | (5,177,598) |
| Subtotal | $ 2,180,198 | $ 8,496,540 | $ 3,053,242 | $ 31,029,384 |
| Less: Cost of Goods Sold (68%) | (1,482,535) | (5,777,647) | (2,076,205) | (21,099,981) |
| Less: Shipping Costs (6%) | (130,812) | (509,792) | (183,195) | (1,861,763) |
| **Total Amazon Deposits** | $ 566,851 | $ 2,209,100 | $ 793,843 | $ 8,067,640 |

EXHIBIT 5

**CHRISTOPHER G. LINSCOTT**
**3443 N. CAMPBELL AVENUE, SUITE 115**
**TUCSON, ARIZONA 85719**
**(520) 884-0176**

**EDUCATION**:

B.A. Psychology, Amherst College, 1980
M.S. Accounting, New York University GBA, 1982
Certified Public Accountant (CPA) 1984
Certified Fraud Examiner (CFE) 1992
Certified Insolvency and Restructuring Advisor (CIRA) 1997

**BACKGROUND**:

1994 - Present
**DIRECTOR**
**Keegan Linscott & Associates, PC**

Owner of CPA firm. Head of bankruptcy and reorganization, litigation support, and forensic accounting practice for the firm. Includes Tucson and Scottsdale offices practice leader.

1990-1993
**DIRECTOR, LITIGATION SUPPORT SERVICES**
**Coopers & Lybrand – Tucson, AZ**

Responsible for work associated with financial aspects of clients and support for attorneys involved in litigation, fraud, receivership cases and bankruptcy work primarily in Arizona. Duties included damage calculation review and preparation, forensic accounting and financial analysis. Other duties included manager responsibilities for financial audits.

1989-1990
**CHIEF FINANCIAL OFFICER**
**Tombstone & Southern Railroad, Inc.**

Served for two years as CFO of start-up real estate and entertainment project in Cochise County. As one of three principals in this project, duties encompassed finance; budgeting, taxes, financial reporting, prospective reporting, capital solicitation, cash management and development of a business plan. Non-financial responsibilities included marketing, public speaking and recruitment of personnel.

1981-1989
**SENIOR AUDIT MANAGER**
**Peat Marwick Main & Co. – New York, NY**
**Peat Marwick Main & Co. – Boston, MA**

Responsibilities included the supervision of fifty staff people on sixty audits for twelve clients. Duties included public and private reporting to the SEC and other third parties, day-to-day management of field work, oral and written presentations to top client management and Board of Directors, technical problem-solving and profit maximization. Areas of industry expertise include real estate, financial institutions, higher education, and manufacturing.

**RANGE OF EXPERIENCE**:

Served as Trustee for various Chapter 11 and Chapter 7 entities primarily in the real estate, hospitality and health care sectors.

Served as Chief Restructuring Officer for corporate commercial entity in Chapter 11.

Served as Examiner in Chapter 11 proceedings focusing on real estate entities and alleged fraud.

Served as "Responsible Party" (Trustee) for Chapter 11 debtor in successful corporate reorganization.

Served as Receiver for corporate commercial entities and financial institutions in Arizona and California.

Served as Liquidating Trustee for corporate commercial entities.

Served as Plan Agent in Chapter 11 proceeding.

Served as Court appointed Special Master in commercial litigation case.

Prepared operating cash forecasts for real estate projects, commercial entities, municipal and non-profit businesses.

Developed financial packages used to obtain project financing for real estate projects and commercial entities.

Assisted in due diligence reviews of corporate commercial acquisitions and joint ventures.

Assisted in the preparation of SEC filings for bankrupt real estate entities.

Served as accountant for various creditor committees in Chapter 11 proceedings to analyze fraudulent conveyance and preference issues and financial viability of ongoing entities.

Reviewed bankruptcy documents of various commercial entities to determine asset liquidation preference and financial viability of ongoing entity.

Served as financial advisor for various Chapter 11 entities, assisting with various aspects of corporate reorganization.

Provided expert witness testimony, including damage analysis and accounting-related issues in commercial litigation cases dealing with lost profits, owner disputes, securities fraud, employee/employer disputes, personal injury, business interruption claims and various other matters.

Performed various fraud analyses and forensic procedures related to litigation in Ponzi schemes and employee embezzlement schemes.

Constructed damage theories including computer-generated models for commercial businesses involved in litigation.

Analysis of sole and separate property issues, hidden assets and closely held corporations in divorce settlement litigation.

**PROFESSIONAL ORGANIZATIONS**: Member of the Arizona Society of CPA's, American Institute of Certified Public Accountants, National Association of Certified Fraud Examiners, Association of Insolvency and Restructuring Advisors. Board of Directors of Bashas, Inc.

**PUBLICATIONS**: Arizona Attorney Magazine, September 2020, "Bankruptcy and the Small Business Reorganization Act".