JOSHUA D. HURWIT
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
JUSTIN WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEYS
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV,<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**GOVERNMENT'S SUPPLEMENTAL BRIEF ON "ILLEGAL GOODS" UNDER 18 U.S.C. § 981(a)(2)(A)** |

In determining the forfeitable proceeds owed, the Court should assess those proceeds as gross proceeds under 18 U.S.C. § 981(a)(2)(A) because the Defendants sold cellphones and accessories bearing counterfeit marks—illegal goods. In this case, the "illegal" nature of the goods sold by all Defendants is clear from the statute of conviction and applicable forfeiture provisions. The Defendants' assertion otherwise—that their scheme involved the sale of "legal goods"—ignores the Court's instructions to the jury, the verdicts, and the statutory framework applicable to their crimes. They are not entitled to a deduction of costs in the Court's assessment of their forfeitable proceeds.

I.  **Legal Framework**

   A.  **Proceeds**

While the same underlying conduct served as the basis for the convictions, the forfeiture provisions applicable to those convictions differs for counterfeit trafficking under 18 U.S.C. § 2320 and wire and mail fraud under 18 U.S.C. §§ 1341, 1343. What's more, the meaning of "proceeds" in the forfeiture provisions differs.

   1.  **Trafficking in Counterfeit Goods**

Forfeiture in a criminal case dealing with the trafficking of counterfeit goods, labels, and packaging reaches "[a]ny property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of" the offense. 18 U.S.C. § 2323(a)(1)(C). In similarly-worded forfeiture provisions, the Ninth Circuit has made clear that "proceeds" means gross receipts, not profits. *See United States v. Christensen*, 828 F.3d 763, 822–24 (9th Cir. 2015).

   2.  **Wire and Mail Fraud**

In the context of mail and wire fraud, however, the meaning of "proceeds" is more nuanced.[1] "Proceeds," as defined in the forfeiture statute related to wire and mail fraud, is bifurcated into two provisions depending upon whether the crime involved "illegal" or

---

[1]  As is the roundabout way in which this definition of "proceeds" applies to wire and mail fraud. The Government may civilly forfeit pursuant to 18 U.S.C. § 981(a)(1)(C) any property, real or personal, which constitutes or is derived from proceeds of any "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). A "specified unlawful activity" includes any offense listed in § 1961(1), which, in turn, includes any violation of § 1343 (wire fraud) and § 1341 (mail fraud), including conspiracies to commit those offenses. Because the Government may civilly forfeit proceeds of the offenses which constitute or were derived from proceeds of such offenses, it may criminally forfeit the proceeds, pursuant to 28 U.S.C. § 2461(c), which authorizes the criminal forfeiture of any property that can be forfeited civilly, using the procedures set forth in 21 U.S.C. § 853.

"lawful" goods and services. *See* 18 U.S.C. § 981(a)(2)(A), (B). "In cases involving illegal goods, illegal services, [and] unlawful activities," the term "proceeds" means all property obtained from or traceable to the offense; this definition is "not limited to the net gain or profit realized from the offense." *Id.* § 981(a)(2)(A). "In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." *Id.* § 981(a)(2)(B).

When assessing whether a particular good or activity falls within the "lawful" or "unlawful" category, courts have discussed the distinction, in part, in the context of whether the "crime must involve a good or service that could, hypothetically, be provided in a lawful manner." *See United States v. George*, 886 F.3d 31, 40 (1st Cir. 2018). Applying this standard, courts have compared illegal activities to robbery, contract-killing services, embezzlement, as well as selling foodstamps and contraband cigarettes—all of which can never be conducted legally. *See United States v. Davis*, 53 F.4th 833, 853–54 (5th Cir. 2022); *United States v. Bodouva*, 853 F.3d 76, 80 (2d Cir. 2017) (per curiam) ("unlawful activities" under § 981(a)(2)(A) means "inherently unlawful activities, like say the sale of foodstamps, or a robbery" (internal quotation marks omitted)); *United States v. Hasan*, 718 F.3d 338, 346 (4th Cir. 2013) (holding sale of contraband cigarettes illegal activity).

Service-based operations and sales of goods that are not inherently illegal, however, fall within the category of "legal" goods and activities because one could hypothetically perform and sell them legally. Courts have concluded service-based operations like operating an HVAC school, selling securities, contracting for the installation of guardrails and barriers, and operating an investment firm were all "lawful" activities and goods. *See*

*United States v. Nacchio*, 573 F.3d 1062, 1088–89 (10th Cir. 2009) (insider trading is not an "unlawful activity" under § 981(a)(2)(A) because "securities themselves generally are lawful"); *United States v. Mahaffy*, 693 F.3d 113, 138 (2d Cir. 2012) (same); *see United States v. Martin*, No. 1:13-CR-0065-BLW, 2014 WL 221956, at *1, 5 (D. Idaho Jan. 21, 2014) (applying § 981(a)(2)(B) to reduce the costs associated with guardrails); *United States v. Balsiger*, 910 F.3d 942, 957 (7th Cir. 2018) (applying § 981(a)(2)(B) because scheme involved redemption of retail coupons ("lawful goods") under false pretenses).

## II. Argument

Under the forfeiture provisions applicable to both wire and mail fraud and trafficking in counterfeit goods, the Court should order the Defendants to forfeit the gross proceeds of their criminal activity.

### A. Section 981(a)(2)(A) governs the assessment of proceeds because the Defendants' products bore counterfeit trademarks and, thus, were "illegal goods"; since selling counterfeit goods is never legal, the defendants were also engaged in "illegal activity."

Both the goods and the activity are "illegal" here. Congress has categorically criminalized goods bearing counterfeit trademarks and the sale of counterfeit goods is never legal. Accordingly, both the "good" and the "activity" serving as the basis for the criminal convictions here are inherently unlawful.

The jury found the goods sold by the Defendants bore counterfeit marks. *See, e.g.,* Final Jury Instructions, ECF 1602, at 34; *see also* Verdict Form, ECF 1596, at 1–2. When instructing the jury, this Court made clear that guilty verdicts (for both the wire fraud and counterfeit trafficking allegations) required that the jury conclude the goods sold bore counterfeit marks as defined in § 2320. *See* Instruction 27, ECF 1602, at 35 ("[T]o find a defendant guilty of wire fraud, the government must not only prove the four elements listed

above [articulating the wire fraud elements], it must also prove that the defendant knowingly used a 'counterfeit mark' on or in connection with the good. The term 'counterfeit mark' is defined later in these instructions, in Instruction No. 33."); Instruction 33, ECF 1602, at 43 ("A 'counterfeit mark' is a mark that is . . . 'spurious'– meaning that it is false or inauthentic, in that it deceptively suggests an erroneous origin of a good"). Additionally, "counterfeit mark" requires the use of such marks in connection with trafficking, which includes possession. *See* 18 U.S.C. § 2320(f)(1)(A)(i); Instruction 33, ECF 1602, at 43. Accordingly, any article or component bearing a "counterfeit mark" necessarily means that the item was intended to be placed in commerce and trafficked—not merely possessed. *See id.*

Attempting to rewrite history, the Defendants completely ignore the statutory definition of "counterfeit mark," the trial evidence, and the jury's finding of guilt on this issue. Instead, they simply refer to their goods as "refurbished phones" and proclaim that these goods are lawful without any supporting citation. *See, e.g.*, ECF 1657, at 11 ("This is in contrast to the refurbished phones sold in this case. Possession of a refurbished phone was lawful."); ECF 1653, at 7 (asserting they sold "lawful goods" without any supporting citation to law or record); ECF 1656, at 6 ("The phones that Mr. Bibikov sold were not inherently illegal and, instead, the jury found that they were sold in an illegal manner."). As to this point, the Government agrees: possession of a refurbished phone is legal.

Had the Defendants' scheme been narrower and *only* involved the sale of genuine, used goods as new, then the Government agrees that § 981(a)(2)(B) would apply to the wire fraud convictions. But that was not their scheme. Rather, they took old phones, refurbished them with parts bearing counterfeit trademarks, placed those phones alongside accessories

bearing counterfeit trademarks, and wrapped them in packaging bearing counterfeit trademarks. *See, e.g.*, Trial Tr. at 2972:18–2973:11, 3006:20–3007:25. The crimes for which they were convicted therefore rendered the goods themselves unlawful—regardless of how the goods were represented during the sale.

Unlike a security or guardrail, therefore, it is clear that counterfeit goods are illegal. Section 2320 criminalizes the sale of counterfeit goods, without exception. *See* 18 U.S.C. § 2320(a). In the forfeiture provisions, Congress even called for the *destruction* of "articles or component of an article bearing . . . a counterfeit mark." 18 U.S.C. § 2323(b)(2)(B)(i) ("At the conclusion of the forfeiture proceedings, the court, unless otherwise requested by an agency of the United States shall order that any . . . forfeited article or component of an article bearing or consisting of a counterfeit mark be destroyed or otherwise disposed of according to law"). This statutory framework makes clear that items—even components—bearing a counterfeit mark are "unlawful goods" within the meaning of § 981(a)(2)(A).

These statutory provisions also highlight the differences between the goods sold by the Defendants and goods to which courts have applied § 981(a)(2)(B). *See, e.g.*, ECF 1653, at 6–7 (citing *Martin*, 2014 WL 221956, at *5 (applying § 981(a)(2)(B) when the defendant misrepresented facts to obtain a road-construction contract wherein barriers and guardrails were employed to fulfill the contract because "[t]hey were lawful goods sold under a false designation"). No statute criminalizes the trafficking or sale of securities, guardrails, or investment products. Nor does any forfeiture statute mandate destruction of the same. Rather, in the rare case where courts have upheld the application of § 981(a)(2)(B), the fraud stems from the manner of the sale or operation—through misrepresentation—not the nature of the good itself. *See* Stefan D. Cassella, Asset Forfeiture Law in the United States § 25-4,

at 1110 (3d ed. 2022) ("[M]ost courts that have discussed the issue have ended up concluding that the 'gross proceeds' definition in Section 981(a)(2)(A) applies most of the time."). Here, because Congress has categorically criminalized goods bearing counterfeit trademarks, § 981(a)(2)(A) applies as the scheme involved the sale of "illegal goods."

Moreover, in addition to being an "unlawful good," the jury also found the Defendants guilty of "illegal activity" because the sale of counterfeit goods is never legal. It therefore is an inherently "unlawful activity" within the meaning of § 981(a)(2)(A). *Compare United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009) (holding that the sale of food stamps was never legal and, as such, "unlawful activity" within the meaning of § 981(a)(2)(A)); *Bodouva*, 853 F.3d at 80 ("unlawful activities" under § 981(a)(2)(A) means "inherently unlawful activities, like say the sale of foodstamps, or a robbery" (citations omitted)). Simply, selling counterfeit goods implicates both "illegal goods" and "illegal services" because it can never be performed legally. Accordingly, the Court should apply § 981(a)(2)(A).

### B. Under the intellectual property forfeiture provision, "proceeds" are gross proceeds; accordingly, regardless of the application of § 981, the Court must nevertheless assess proceeds based on the gross receipts, not profits.

Forfeiture in a criminal counterfeit goods, labels, and packaging trafficking case reaches "[a]ny property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of" the offense. 18 U.S.C. § 2323(a)(1)(C). In their argument, the Defendants fail to account for this independent path to forfeiture of their proceeds.[2] Nor do they address the Ninth Circuit's recent interpretation of a

---

[2] In his brief, Defendant Mikhail Iyerusalimets argues that the meaning of "proceeds" is ambiguous, but does not offer a meaning. As support, he cites *United States v. Santos*, 553 U.S. 507 (2008). The Court should reject the Defendants' assertion that *Santos* renders the

similarly-worded forfeiture provision wherein the Ninth Circuit made clear that "proceeds" means gross receipts, not profits. *See Christensen*, 828 F.3d at 822 ("We agree with the view that 'proceeds' in the RICO forfeiture statute refers to gross receipts rather than net profits."). As with the RICO provision, the forfeiture provisions covering intellectual property crimes were intended to be broad, remedial, and enhance enforcement of intellectual property rights. *See* 154 Cong. Rec. S7280-01, at 281 (noting that "the bill improves and harmonizes the forfeiture provisions in copyright and counterfeiting cases); *id.* at 285–86 (discussing the importance of combating infringement and allocating additional resources to criminal enforcement); *see also supra* Cassella, § 25-4, at 1106 & n.51 (recognizing that "[t]he majority of courts have taken the broader view [of proceeds], holding that if a given forfeiture statute is silent on the issue, it is assumed that the wrongdoer must forfeit the gross proceeds of his offense"). Accordingly, "proceeds" in the context of § 2323(a)(1)(C) means gross proceeds.

## Conclusion

Pursuant to statute, this Court should assess the forfeitable proceeds under § 981(a)(2)(A) as both the goods and activity were inherently unlawful. Separately, § 2323(a)(1)(C) also mandates forfeiture of gross proceeds. Accordingly, the Court should not deduct any cost to the Defendants in operating their criminal scheme in deciding forfeiture amounts.

---

term "proceeds" inherently ambiguous in the context of criminal forfeiture. *See* ECF 1653, at 4. When faced with such arguments, the Ninth Circuit has flatly rejected the comparison. *See Christenson*, 828 F.3d at 82–23 & n.28 ("The issue in *Santos* was quite different, however."); *see also supra* Cassella, § 25-4, at 1116–17 & n.82 ("[T]he courts have been unanimous in holding that whatever *Santos* may have meant in money laundering cases before it was legislatively overruled, it has no application to civil or criminal forfeiture." (footnotes omitted)).

Respectfully submitted this 9th day of January, 2023.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

 */s/ Katherine L. Horwitz*
KATHERINE L. HORWITZ
Assistant United States Attorney

 */s/ Christian Nafzger*
 CHRISTIAN NAFZGER
Assistant United States Attorney

 */s/ Justin Whatcott*
 JUSTIN WHATCOTT
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9, 2023, the foregoing GOVERNMENT'S SUPPLEMENTAL BRIEF was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| |
|---|
| JOHN DEFRANCO<br>1031 E. Park Blvd.<br>Boise, ID 83712<br>jcd@greyhawklaw.com<br>*Attorney for Pavel Babichenko* |
| PAUL E. RIGGINS<br>380 South 4th Street, Ste. 104<br>Boise, ID 83702<br>rigginslaw@gmail.com<br>*Attorney for Piotr Babichenko* |
| ROBYN A. FYFFE<br>P.O. Box 5681<br>Boise, ID 83705<br>robyn@fyffelaw.com<br>*Attorney for David Bibikov* |
| ELLEN NICHOLE SMITH<br>P.O. Box 140857<br>Garden City, ID 83714<br>ellen@smithhorras.com<br>*Attorney for Mikhail Iyerusalimets* |
| ROB S. LEWIS<br>913 W. River Street, Ste. 430<br>Boise, ID 83702<br>office@roblewislaw.com<br>*Attorney for Timofey Babichenko* |

        /s/ *Katherine Horwitz*
        Assistant United States Attorney