JOSHUA D. HURWIT
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
JUSTIN WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEYS
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV,<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**GOVERNMENT'S CONSOLIDATED REPLY TO DEFENDANTS' RESPONSES TO MOTION FOR PRELIMINARY ORDER OF FORFEITURE (ECF 1653, 1654, 1655, 1656, AND 1657)** |

In this consolidated reply, the Government addresses the legal and factual issues collectively raised by the Defendants in response to the Government's motion for a Preliminary Order of Forfeiture for the assets enumerated therein. *See* Motion, ECF 1644. Nothing in the Defendants' responses refutes the Government's assertion that all assets listed in the motion are forfeitable as criminal proceeds and facilitating property. *See* ECF 1653–1657.[1]

---

[1] For clarity's sake, the Government identifies the particular defense motion(s) and page numbers in the heading of each issue.

I. Argument

   A. Application of the "Substantial Connection" Test (ECF 1657, at 6–7)

The "substantial connection" test applies to facilitating property in *civil* forfeiture proceedings. The Ninth Circuit has not extended this test to criminal proceedings or the criminal intellectual property forfeiture provision specifically. Accordingly, Defendant Paul Babichenko's assertion that the Government's definition is "incomplete" misunderstands the procedural context of the rule and wholly ignores the applicable criminal parallel provision that is broader. *See* ECF 1657, at 6–7 ("[The government's] definition is incomplete because it omits inclusion of the 'substantial connection' test. Applying the 'substantial connection' test clarifies the scope of what constitutes facilitating property."). Regardless, even if the test applied, the Government could easily show such a connection to warrant forfeiture of the property noticed.

   1. Section 2323(a)(1)(B) governs the forfeitability of 909 N. Cole and other "facilitating property."

There is no provision that criminally forfeits "facilitating property" of the commission of wire or mail fraud. Neither the wire nor mail fraud statute delineate a separate forfeiture punishment specifically. *See* Stefan D. Cassella, Asset Forfeiture Law in the United States § 25-3, at 1091–92 (3d ed. 2022) ("Thus, Section 981(a)(1)(C) constitutes the statutory authority for forfeiting the proceeds of all of the most commonly-charged federal crimes that do not have specific forfeiture provisions of their own, the most important being mail and wire fraud."); 18 U.S.C. §§ 1341, 1343. Instead, criminal forfeiture for a criminal violation of wire and mail fraud depends upon application of 18 U.S.C. § 981(a)(1)(C), which allows for the forfeiture of "proceeds," not "facilitating property." *See* § 981(a)(1)(C).

Accordingly, the intellectual property statutory provisions govern the forfeitability of facilitating property. Section 2323(a)(1)(B) mandates forfeiture of "[a]ny property used, *or intended to be used*, in any manner or part to commit or facilitate the commission of an offense [under § 2320]." 18 U.S.C. § 2323(a)(1)(B) (emphasis added). Nowhere in § 2323 did Congress include the "substantial connection test" established for civil proceedings by 18 U.S.C. § 983(c)(3). *See id.*; *see also id.* § 2323(b)(2)(a) (incorporating the forfeiture procedures articulated in 21 U.S.C. § 853 in criminal forfeiture proceedings); *see infra* I.A.2 (discussing the context in which the "substantial connection" test—relied upon by the defendants—applies). The absence of this language, coupled with the breadth of the definition of facilitating property, speaks volumes. Congress intended the forfeiture in criminal trademark and copyright cases to be extensive and punitive. Simply, the "substantial connection" test does not apply here. As long as property was "used . . . or intended to be used" it is forfeitable as an instrumentality of the crime. *Id.* § 2323(a)(1)(B).

2. **The "substantial connection" test in 18 U.S.C. § 983(c)(3) does not apply; nor has the Ninth Circuit incorporated this civil procedure to apply in criminal forfeiture proceedings at all.**

The "substantial connection" test applies to determine whether specific property facilitated a crime in civil forfeiture proceedings, not criminal ones. *See* 18 U.S.C. § 983(c)(3).

As noted above, wire and mail fraud have no facilitating property forfeiture, so the substantial connection test does not apply to those offenses. In addition, § 983(c)(3) applies "[i]n a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property." *Id.* § 983(c)(3) (articulating standard under the statutory heading: "General rules for civil forfeiture proceedings"). The Government has been unable to find a case where the

Ninth Circuit has extended the "substantial connection" test applicable in civil forfeiture proceedings to criminal forfeiture proceedings generally.

Some courts have applied the "substantial connection" test to criminal forfeitures, but even then, the rule's application has not added any significant burden. *See*, *e.g.*, *United States v. Herder*, 594 F.3d 352, 364–65 (4th Cir. 2010) (adopting the substantial connection test in criminal forfeiture cases and describing test as showing that the property made the offense less difficult to commit, or more or less free from obstruction or hindrance). In any event, the sounder cases take a different approach. *See, e.g.*, *United States v. Heldeman*, 402 F.3d 220, 222 (1st Cir. 2005) (declining to adopt "substantial connection" test in criminal forfeiture but finding that "whatever the exact degree of connection required by the criminal forfeiture statute, . . . the evidence provided to the district court in this case amply supported the forfeiture").

Without explanation or citation to supporting authority, the defense asserts: "Applying the 'substantial connection' test, it is apparent the facilitating properties subject to forfeiture are more limited than those identified by the government." *See* ECF 1657, at 7. But the defense fails to explain how § 983(c)(3) applies here. In the specific context of forfeiture of facilitating property under § 2323, it is difficult to see how § 2323(b)(1) incorporates the substantial connection test from § 983(c)(3). Accordingly, for the above-stated reasons, the Court should not employ the "substantial connection" test. Even if it were to apply, however, it does not change the burden in any material way. Accordingly, even if this Court employed the "substantial connection" test, the Government has satisfied its burden to show a sufficient nexus between the forfeitable property and crimes of conviction. *See infra* I.C.

### B. Excessive Fines (ECF 1653, at 12–13; ECF 1654, at 5–6; ECF 1655, at 7–8; ECF 1657, at 15–20)

The requested forfeiture is proportional to the crimes of conviction for each Defendant. A forfeiture will violate the Eighth Amendment's prohibition only if it is "grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 336–37 (1998). In making this Eighth Amendment determination, courts are not bound by "any rigid set of factors." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004). Rather, courts consider: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *Id.* at 1121–22 (citing *Bajakajian*, 524 U.S. at 337–40). All of these factors demonstrate the constitutionality of the requested forfeiture here.

Unlike the isolated reporting offense in *Bajakajian*, the Defendants were convicted of operating a ten-year, sophisticated scheme wherein they imported hundreds of thousands of counterfeit trademarked goods, repackaged them, and sold them to many thousands of unsuspecting consumers online. *Compare Bajakajian*, 524 U.S. at 337 (describing a violation of 31 U.S.C. § 5316 as "solely a reporting offense" that did not constitute a serious offense). Each of these counterfeit electrical items posed a potential serious risk to consumers, as described by the real-world experiences of Mr. Kroll and Mr. Krause during trial. *See, e.g.*, Trial Tr. at 2158:15–59:13 (testifying that purchased charger made a noise when plugged into the wall socket and got very hot). The jury also heard that the Defendants' tested chargers had an 89% percent failure rate on basic safety testing. *See generally* Gov. Ex. 2822; *see also* Trial Tr. at 2472.

In addition to posing a risk to consumers, counterfeit-goods trafficking steals valuable intellectual property. Trademark owners are victims of trademark-counterfeiting; they enjoy an exclusive right to prohibit others from trafficking in the spurious versions of goods and services bearing their marks, whether they take the form of words, names, symbols, devices (or some combination thereof) that indicate the source of particular goods. *See Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017); *see also* 18 U.S.C. § 2320. Congress crafted § 2320 not only to protect consumers from deception or harm, but also as a means of protecting against "the cheapening and dilution of the genuine product." *United States v. Hon*, 904 F.2d 803, 806 (2d Cir. 1990).

To run this scheme, the Defendants solicited the help of unsuspecting young members of their community (who operated numerous online businesses), *see, e.g.*, Gov. Ex. D-2002, at 4 (chart of employees), used children as laborers in their church-operated grade school,[2] and ignored the safety risks posed by their counterfeit products, *see, e.g.*, Ex. 2106 (email complaining of dangerous charger). Paul Babichenko taught overseas counterfeiters how to produce more authentic looking fakes and escape border protections. *See, e.g.*, Ex. 3005.48 (instructing Wallace to cover logo on counterfeit iPhone backplates); Trial Tr. at 5344:04–:10; *see* Ex. 3005-03 (instructing to make sure phones match color associated with IMEI); Ex. 3005-05 (sending photograph of "real" packaging).

The scope and seriousness of the offense is further reflected in the guideline range and statutory maximum sentences. For these crimes, the Government calculates the U.S.

---

[2]  During trial, the Government did not solicit testimony related to child labor due to concerns that it would be unduly prejudicial. At sentencing, however, it intends to offer testimony on this topic from former teachers at the school operated by the Morning Star Church.

GOVERNMENT'S REPLY TO MOTION FOR PRELIMINARY ORDER OF FORFEITURE—6

Sentencing Guideline range as 292 to 365 months.  *See* U.S. Sentencing Guidelines §§ 2B5.3; 2B1.1; 3B1.1; and 3C1.1 (2021); *see $100,348.00 in U.S. Currency*, 354 F.3d at 1122 ("However, the maximum penalties under the Sentencing Guidelines should be given greater weight than the statutory maximum because the Guidelines take into account the specific culpability of the offender.").  The statutory maximum for the crimes of conviction—run consecutively—spans more than thirty years' imprisonment.  18 U.S.C. §§ 1341, 1343, 2320.  Finally, as discussed herein and in previous filings, "[t]he statute mandates that a defendant forfeit a very specific amount—the proceeds of his criminal activity," or in other words, the amount "he received in connection with the commission of the crime."  *United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006).

In light of the scope and seriousness of the offense, the penalties imposed, and extent of harm caused, the money judgment amounts are constitutionally proportional to the crimes of conviction.

### C. Nexus for Specific Forfeitable Property

#### 1. "Sufficient Nexus" as the But-For Test (ECF 1655, at 6–7)

Previously, this Court has employed the "but for" causation analysis to determine whether the Government has established a sufficient nexus between the crimes of conviction and property to be forfeited.  *See United States v. Martin*, No. 1:13-cr-065-BLW, 2014 WL 221956, at *3–4 (D. Idaho Jan. 21, 2014).  In so doing, this Court noted that five Circuit Courts of Appeal had done so, but the Ninth Circuit had not yet reached the issue.  *See id.*  Seven years later, this remains true.  *See United States v. Mongol Nation*, -- F.4th ---, 2023 WL 116725, at *6–7 (9th Cir. Jan. 6, 2023) (discussing "requisite nexus" language without further illumination).  Applying the but-for test, the forfeitable property is sufficiently tied to

the criminal convictions here to satisfy Federal Rule of Criminal Procedure 32.2's nexus requirement.

2. **Nexus for Amazon Sales (ECF 1653, at 9 –11; ECF 1655, at 6–7)**

The trial evidence demonstrates a sufficient nexus between the crimes of conviction and Amazon deposits to satisfy Rule 32.2. The evidence presented at trial proved the criminal nature of the Defendants' sales. Namely, the physical evidence seized from large and small warehouses on August 18, 2018, *see* Exs. 5400 and 5500 series, the physical evidence seized from the Anatole residence, *see* Exs. 5600 series, the dozens of online, undercover purchases conducted by law enforcement over the course of three years, *see, e.g.*, Exs. 5008–5100, 5201.B, 5205, as well as the business records obtained during the investigation all show that the Defendants primarily sold their counterfeit products as "brand new," *see, e.g.*, Exs. 1501–09. This point was confirmed through numerous witnesses' testimony during trial. Piotr Babichenko testified that "the vast majority" of his products on Amazon were sold as "new," Trial Tr. at 4850:11–:17, as did numerous employees, *see, e.g.*, Trial Tr. at 3238–39.

3. **909 Cole Property (ECF 1657, at 7–8)**

There is no doubt that the 909 Cole Road Property was an instrumentality of the offense: Paul Babichenko testified to using this location as the registered address for his criminal business and the records demonstrate that use. *See* Trial Tr. at 5131–32 (testifying that the 909 Cole property was one of his business addresses during the conspiracy). Paul Babichenko listed the 909 Cole property for his Pacific Cellular business, Ex. 1607, at 21, and he used this address to obfuscate his true location in fraudulent invoices, *see, e.g.*, Ex.

4054 (June 29, 2018 email listing real property as location for source of "Brand New Sealed Samsung" cellphones sold to Cell2U4Less).

What's more, he listed this same address for his "Midway Cellular" business, which was often the business interchangeably used with Midstar in fraudulent invoices. *See, e.g.*, Trial Tr. at 3215; *see, e.g.*, Ex. 4042 at 2–3 (using "909 N. Cole Rd" as the address associated with "Midway Cellular LLC" on a fraudulent invoice submitted to Amazon to maintain the Cell2U4Less Amazon selling account); *see also* Ex. 2300, at 1 (Package Warrant summary chart demonstrating Cell2U4Less as sending 1,551 packages over a two-day period); Ex. 1507 (Amazon records for Cell2U4Less). This evidence demonstrates that Paul Babichenko used and intended to use the 909 Cole property in the commission of his crimes. Accordingly, under § 2323(a)(1)(B)'s definition of facilitating property, it is forfeitable.

4. **Sahara Case (ECF 1654, at 2–3; ECF 1657, at 8–9)**

As the trial evidence demonstrated, Sahara Case was not just selling its own manufactured cases. *See* Ex. 2300, at 2 (showing 78 Sahara Case phone cases of 2,548 outbound packages); Ex. 2311, at 2; Trial Tr. at 630:13–:24 (describing Sahara Case screen protectors). Rather, it was also a business used to sell counterfeit accessories. *See, e.g.*, Ex. 2100 (undercover purchase of counterfeit "Quallcomm" quick charger from Sahara Case). And it was the business relied upon by Piotr Babichenko to obscure his participation in the counterfeit goods scheme. *Compare* Exs. 2821-01, 2821-11 (interview with Piotr Babichenko on August 22, 2018, asserting that Sahara Case was "strictly" all he had done for the past two to three years), *with* Ex. 5100 (counterfeit "Quallcomm" chargers purchased from Sahara Case on August 9, 2018). As such, the business and associated bank accounts facilitated the crimes.

GOVERNMENT'S REPLY TO MOTION FOR PRELIMINARY ORDER OF FORFEITURE—9

## Conclusion

For the reasons stated herein, the Government requests that the Court:

1. Enter a preliminary order of forfeiture for property identified in the Motion for Preliminary Order of Forfeiture, ECF 1644;

2. Enter a Forfeiture Money Judgment against each Defendant, as follows:

    a. Paul Babichenko: $36,206,982.10;

    b. Piotr Babichenko: $4,361,502.34;

    c. Tim Babichenko: $11,004,926.31;

    d. David Bibikov: $5,419,969.19;

    e. Mikhail Iyerusalimets: $4,183,572.55; and

3. Enter a preliminary order of forfeiture for substitute property identified in the Motion for Preliminary Order of Forfeiture, ECF 1644.

Respectfully submitted this 13th day of January, 2023.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

 /s/ Katherine L. Horwitz
KATHERINE L. HORWITZ
Assistant United States Attorney

 /s/ Christian Nafzger
 CHRISTIAN NAFZGER
Assistant United States Attorney

 /s/ Justin Whatcott
 JUSTIN WHATCOTT
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2023 the foregoing GOVERNMENT'S REPLY TO MOTION FOR PRELIMINARY ORDER OF FORFEITURE was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| |
|---|
| JOHN DEFRANCO<br>1031 E. Park Blvd.<br>Boise, ID 83712<br>jcd@greyhawklaw.com<br>*Attorney for Pavel Babichenko* |
| PAUL E. RIGGINS<br>380 South 4th Street, Ste. 104<br>Boise, ID 83702<br>rigginslaw@gmail.com<br>*Attorney for Piotr Babichenko* |
| ROBYN A. FYFFE<br>P.O. Box 5681<br>Boise, ID 83705<br>robyn@fyffelaw.com<br>*Attorney for David Bibikov* |
| ELLEN NICHOLE SMITH<br>P.O. Box 140857<br>Garden City, ID 83714<br>ellen@smithhorras.com<br>*Attorney for Mikhail Iyerusalimets* |
| ROB S. LEWIS<br>913 W. River Street, Ste. 430<br>Boise, ID 83702<br>office@roblewislaw.com<br>*Attorney for Timofey Babichenko* |

                                  /s/ *Katherine Horwitz*
                                Assistant United States Attorney