UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV,<br>MIKHAIL IYERUSALIMETS, and<br>ARTUR PUPKO,<br><br>    Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION &<br>ORDER** |

**INTRODUCTION**

Before the Court are two motions: (1) a Motion to Stay Financial Penalties
Pending Appeal (Dkt. 1928); and (2) a Motion to Stay Enforcement and Collection
of the Forfeiture Order Pending Appeal (Dkt. 1933). Four of the six convicted
defendants in this matter—Pavel, Piotr, and Timofey Babichenko and Mikhail
Iyerusalimets—have either filed or joined these motions. For the reasons explained
below, the Court will partly grant and partly deny the motions. As will be
explained, the Court will require the moving defendants to make monthly
payments on their restitution obligations and fines during the pendency of the
appeal. Those payments shall be deposited into the Court's registry until the appeal

has been resolved. As for the forfeiture orders, the Court will partly grant and partly deny the motion to stay execution of these orders, as follows: (1) the Court will deny the motion to the extent that it will not prevent the government from liquidating all forfeited vehicles other than the 2016 Lexus; and (2) the Court will grant the motion in all other respects (thus staying execution of the forfeiture orders during the pendency of the appeal), though it will order defendants to refrain from transferring or otherwise encumbering the forfeited assets.

## BACKGROUND

In 2022, a jury convicted five defendants of conspiring to traffic in counterfeit goods and commit wire and mail fraud. Some were also convicted of discrete acts of the same crimes. The Court sentenced the four moving defendants to serve prison sentences and to pay fines and restitution, as shown here:

| Defendant | Incarceration | Fine | Restitution |
|---|---|---|---|
| Pavel Babichenko | 72 months | $21,000 | $119,458.37 |
| Piotr Babichenko | 48 months | $10,000 | $ 74,661.48 |
| Timofey Babichenko | 48 months | $10,500 | $ 74,661.48 |
| Mikhail Iyerusalimets | 1 month | N/A | $ 14,932.29 |

The Court also entered a preliminary order of forfeiture, directing these defendants to pay money judgments and to forfeit certain specifically listed properties. *See* Dkts. 1766, 1838, 1874, 1912. The forfeiture order provides that the government will credit each defendant with the value of all specific seized personal property, real property, and funds from the various bank accounts toward that defendant's money judgment. *See* Dkt. 1838, ¶¶ 10-13; *see also* Dkt. 1782, at 3, 8. In its

Second Amended Findings, the Court clarified its order in part and issued a

preliminary order of forfeiture "as to Tim Babichenko for $250,000 of the 2051

Three Lakes Property (Property No. 3.K)." *See* Dkt. 1874, at 6. And in its Third

Amended Findings, the Court entered a preliminary order of forfeiture as to certain

properties in Brazil. *See* Dkt. 1912, at 14-15.

The Court will not recite the details of each of forfeiture order. The chart

below, however, provides an overview of the different types of assets forfeited, as

well as the amount of the forfeiture money judgment, as to each moving defendant:

| Defendant | Money Judgment | Bank Accounts[1] | Real Property | Personal Property or Cash |
|---|---|---|---|---|
| Pavel Babichenko | $33,708,700.30 | 5 bank accounts ($477,454.44) | 909 Cole Rd.; 0 W. Chinden; Property in Brazil | 2016 Lexus; 2012 Jeep; Silver Bar; Silver Coins; $4,982 Cash |
| Piotr Babichenko | $3,316,882.40 | 4 bank accounts ($1,972.58) | N/A | N/A |
| Timofey Babichenko | $9,230,196.82 | 10 bank accounts ($517,135.99) | $250,000 of property at 2501 Three Lakes; Property in Brazil | 2015 Ford F-150; 2016 Harley Davidson; Rolex Watch; 30 Diamond Rings; $3,785 Cash |
| Mikhail Iyerusalimets | $953,411.95 | 3 bank accounts ($71,261.83) | N/A | 2010 Land Rover |

[1] The amounts listed in the parentheticals are the total amounts of the balances of the relevant bank accounts, as detailed in the preliminary order of forfeiture. *See* Dkt. 1838, at 47-50.

Third parties have since filed claims as to some of these assets, as follows:

(1) Babichenko LLC claims an ownership interest in the real properties located at 909 Cole Road and 0 W. Chinden Road and in the Mountain West Bank Account No. x3168 ($719.69), *see* Dkt. 1939;

(2) *Sahara Case LLC* claims an interest in Mountain West bank Account x8429 ($67,508.87), *see* Dkt. 1940;

(3) *Natalie Babichenko* claims an undivided one-half interest in a 2016 Lexus, a silver bar, 103 silver coins, approximately $4,982 in U.S. currency, and Mountain West Bank Account x7819 ($3,403.03[2]), *see* Dkt. 1941; and

(4) *Kristina Babichenko* claims an undivided one-half interest in the untainted portion of the home at 2510 West Three Lakes, *see* Dkt. 1944.

The moving defendants (as well as non-moving defendant David Bibikov) appealed their convictions to the Ninth Circuit. This Court previously granted their request to stay execution of their prison sentences, and the moving defendants now ask the Court to stay enforcement of all financial penalties during the pendency of their appeal. The government opposes the stay motions.

## DISCUSSION

### A.    Fines and Restitution

Rule 38 of the Federal Rules of Criminal Procedure empowers district courts

---

[2] The underlying forfeiture order indicates that the balance in this account is $3,403.<u>46</u>, *see* Dkt. 1838, at 48; *see also Gvt. Mtn. for Prelim. Order of Forfeiture*, Dkt. 1644, at 20, whereas the third-party petition indicates that the balance is $3,403.<u>03</u>, Dkt. 1941, at 2. Given the pennies involved, the Court won't concern itself with the discrepancy.

to stay fines, costs, and restitution orders during the pendency of appeal.

Subdivision (c) of that rule addresses fines and costs, providing:

> ***Fine***. If the defendant appeals, the district court . . . may stay a
> sentence to pay a fine or a fine and costs. *The court may stay the
> sentence on any terms considered appropriate* and may require the
> defendant to:
>
> > (1) deposit all or part of the fine and costs into the district
> > court's registry pending appeal;
> >
> > (2) post a bond to pay the fine and costs; or
> >
> > (3) submit to an examination concerning the defendant's assets
> > and, if appropriate, order the defendant to refrain from
> > dissipating assets.

Fed. R. Crim P. 38(c) (emphasis added). The provisions of 18 U.S.C. § 3572(g)

provide additional rules related to stayed fines. That section provides:

> ***Security for Stayed Fine.*** If a sentence imposing a fine is stayed, the
> court shall, absent exceptional circumstances (as determined by the
> court)—
>
> > (1) require the defendant to deposit, in the registry of the district
> > court, any amount of the fine that is due;
> >
> > (2) require the defendant to provide a bond or other security to
> > ensure payment of the fine; or
> >
> > (3) restrain the defendant from transferring or dissipating assets.

18 U.S.C. § 3572(g). Turning to restitution, Federal Rule of Criminal Procedure

38(e) provides that if a defendant appeals, the district court "may stay—*on any*

*terms considered appropriate*—any sentence providing for restitution under 18

U.S.C. § 3556 . . . ." Fed. R. Crim. P. 38(e)(1) (emphasis added).

Rule 38 does not identify the criteria relevant to the issuance of a stay, and the parties disagree as to what standards guide the Court's discretion. The government says the Court's discretion must be guided by the four-factor standard set forth in *Nken v. Holder*, 556 U.S. 418 (2009). These factors are: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Defendants are not so sure that standard applies; they suggest that the Court should apply the same standard it applied in determining whether to stay execution of the prison sentence. *See Motion,* Dkt. 1928, at 2. They also point out that each subdivision of Rule 38 "does not set out any particular standard and seems to give the Court wide discretion to issue a stay for reasons that it deems appropriate." *Reply,* Dkt. 1932, at 3-4.

The Ninth Circuit has not addressed this precise issue, and although courts around the country often recite the four *Nken* factors in evaluating whether to stay

a restitution order,[3] most do not question whether that standard—which was developed in a different context—ought to apply in determining whether to stay a criminal restitution order. It's also notable that in at least one case—albeit in another district—the United States argued that the *Nken* factors have no relevance to whether a restitution obligation should be stayed. *See United States v. Yalincak,* Nos. 3:05cr111-JBA and 05cr153-JBA, 2015 WL 6456537, at *2 (D. Conn. Oct. 26, 2015) (there, the government argued that "*Nken* is inapplicable here because it concerned a stay of removal of an undocumented immigrant and not a stay of restitution"). One district court flagged the issue in a footnote, stating:

> The Court notes that it is unclear whether it is appropriate to apply the *Hilton* test here given that this is a criminal rather than a civil case. Further, some courts have held that the *Hilton* test does not apply to civil monetary judgments, which is more analogous to restitution.

*United States v. Alvarez,* No. 14-CR-1748-GPC, 2015 WL 13187313, at *1 (S.D. Cal. Apr. 10, 2015) (citing *Bolt v. Merrimack Pharms., Inc.*, No. 04-cv-0893-WBS-DAD, 2005 WL 2298423, at *2 (E.D. Cal. Sept. 20, 2005)). (Note that the four-factor "*Hilton* test" referred to by this court was set out in *Hilton v.*

---

[3] *See, e.g., United States v. Razzouk,* No. 11-CR-430 (ARR), 2018 WL 3574868, at *1 (E.D.N.Y. July 25, 2018) (applying *Nken* factors to motion to stay restitution order under Rule 38(e)); *United States v. Oates,* No. 5T2-CR-283 (KOB) (TMP), 2013 WL 2450719, at *4 (N.D. Ala. May 23, 2013) (applying *Nken* factors in determining whether to grant a stay under Rule 38(e)); *United States v. Keifer,* No. 2:08-CR-162, 2012 WL 3878194, at *1 (S.D. Ohio Sept. 6, 2012) (citing *Nken* in applying Rule 38(e)).

*Braunskill*, 481 U.S. 770, 776 (1987) and is the same as the four-factor *Nken* test

referenced above.) And even within the world of civil litigation, one court has

aptly noted that "common sense would suggest that while the preliminary

injunction test may aid a court in determining whether to stay an injunction

pending appeal, *the test's applicability in a motion to stay a money judgment is*

*questionable, given the different nature of the relief being postponed*." *Bolt*, 2005

WL 2298423, at *2 n.4 (emphasis added).

After having surveyed this authority, the Court finds that while Rule 38

would certainly suggest that district courts have wide discretion—after all, it says

the court may issue a stay "on any terms considered appropriate"— the *Nken*

factors nonetheless provide "useful and relevant guidance." *Yalincak*, 2015 WL

6456537, at *2. Put differently, the Court does not consider itself strictly bound by

these factors but will nonetheless consult them in exercising its discretion.

The Court finds that the first *Nken* factor weighs in favor of a stay. Granted,

the Court cannot go so far as to say that the defendants have made a strong

showing that they are likely to succeed on their appeal. But as the Court previously

held, the defendants' appeals raise a substantial question of law or fact, which, if

resolved in their favor, is likely to result in a new trial. *See* Dkt. 1869, at 2; *cf.*

*Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (observing that a stay

movant "must show, at a minimum, that she has a substantial case for relief on the

merits"); *United States v. Silver,* 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016)
(staying, in part, a $1.75 million fine and $5.39 million forfeiture order after
concluding that defendant (1) "articulated a possibly meritorious legal basis for his
appeal" and (2) demonstrated irreparable harm as he would be forced to sell his
residences and incur substantial tax liability associated with liquidating his
retirement account).

The next factor is whether defendants will suffer irreparable harm if they are
ordered to pay restitution and fines before the appeal is resolved. Defendants make
only the briefest of arguments here. They generally argue they "would be
irreparably harmed if they were required to pay the penalties now and then seek to
claw that money back after the appeal is concluded." *Reply,* Dkt. 1932, at 5. This
concern is easily addressed, however, by ordering defendants to pay all amounts
into the Court's registry, which amounts would be held there during the pendency
of the appeal. Other courts have issued similar orders. *See, e.g., United States v.
Goodyear*, No. CR-17-00179-001-HE, 2019 WL 4179527 (W.D. Okla. Sept. 3,
2019) (ordering payment of garnished amounts into court registry).

One of the defendants, Mikhail Iyerusalimets, also says he struggles to make
ends meet for his large family, implicitly suggesting that paying his financial
penalties in one lump sum would pose a financial hardship for him. *Reply,* Dkt.
1932, at 5. The Court will take this into account when determining whether to

order immediate payment versus installment payments, and in determining the

amount of any installment payments. *Cf. United States v. Taylor,* 443 F.2d 31, 32

(6th Cir. 1971) (holding that defendant was not required to deposit the amount of

his $20,000 fine or post bond pending disposition of appeal where his liabilities

exceeded his assets by more than $21,000).

 As for the injury to the other parties, defendants argue that large

corporations such as Samsung and UL won't suffer if they are forced to wait until

the appeal is resolved. The Court is not moved by this particular argument.

Samsung and UL were victims, and they are entitled to receive restitution. The

Court also finds that the public interest factor generally weighs against a stay and

in favor of enforcement of restitution orders.

 Balancing all of these factors, the Court concludes that defendants are not

entitled to a complete stay of their restitution obligations or fines pending appeal.

The Court will, however, allow defendants to make monthly payments toward

these obligations during the pendency of the appeal. In other words, the Court will

partly stay the orders relating to restitution and fines. Each defendant will be put on

a payment schedule such that 1/12 of the amount of currently outstanding fines and

restitution shall be paid on the first business day of each month, beginning on

March 3, 2025, and those payments shall continue during the pendency of the

appeal. Each defendant's monthly payment obligation is shown here, in the last

column:[4]

| Defendant | Fine | Restitution | Total Fine & Restitution | Monthly Payment |
|---|---|---|---|---|
| Pavel Babichenko | $21,000 | $119,458.37 | $140,458.37 | **$11,704.87** |
| Piotr Babichenko | $10,000 | $ 74,661.48 | $ 84,661.48 | **$ 7,055.13** |
| Timofey Babichenko | $10,500 | $ 74,661.48 | $ 85,161.48 | **$ 7,096.79** |
| Mikhail Iyerusalimets | (N/A) | $ 14,932.29 | $ 14,932.29 | **$ 1,244.36** |

All monthly payments will be deposited into the Court's registry until after disposition of the appeal. *See, e.g., United States v. Alvarez*, No. 14-CR-1748-GPC, 2015 WL 13187313, at *2 (S.D. Cal. Apr. 10, 2015) ("Under Rule 38(e)(1), the Court has the discretion to stay restitution pending appeal, and to set whatever terms the Court considers appropriate during the pendency of the stay."); *United States v. Gonzales*, No. CR-17-1311-PHX-DGC, 2022 WL 3082530, at *2 (D. Ariz. Aug. 2, 2022), *aff'd,* No. 21-10362, 2024 WL 466757 (9th Cir. Feb. 7, 2024). Further, the Court will order the defendants to refrain from transferring or dissipating the assets that have been forfeited in this matter.

---

[4] The Court rounded up for each monthly payment, with the result being that some defendants' 12th monthly payment should be a few pennies less than that shown above. The affected defendants may make the appropriate downward adjustment on their 12th payment.

**B.      Forfeiture**[5]

The next issue is whether the Court should stay enforcement of the forfeiture

order. Defendants' request to stay this order is based on Federal Rule of Civil

Procedure 32.2(d), which provides:

> *Stay Pending Appeal*. If a defendant appeals from a conviction or
> order of forfeiture, the court may stay the order of forfeiture on terms
> appropriate to ensure that the property remains available pending
> appellate review.

Fed. R. Crim. P. 32.2(d). According to the Advisory Committee Notes, subdivision

(d) is meant to "ensure that the property remains intact and unencumbered so that it

may be returned to the defendant in the event the appeal is successful." *Advisory*

*Committee's Notes to the 2000 Amendment.* A stay does not delay any ancillary

proceedings or determination of third party rights. Fed. R. Crim P. 32.2(d). A stay

does, however, prevent a court from transferring any property interest to a third

party until the appeal becomes final or the defendant consents. *Id.*

---

[5] Defendant Mikhail Iyerusalimets filed the motion to stay enforcement and collection of
forfeiture pending appeal "on behalf of himself and Paul Babichenko, Piotr Babichenko, and
Timofey Babichenko . . . ." Dkt. 1933, at 1. The government took exception, effectively arguing
that the Court should only consider the request from Mr. Iyerusalimets. Thereafter, Paul, Piotr,
and Tim Babichenko filed notices of joinder in the Iyerusalimets motion. *See* Dkts. 1949, 1950,
and 1951; *see also* Dkts. 1955, 1956, 1957 (joinders in the supporting reply brief, which was
filed at Dkt. 1953). Accordingly, the Court will consider the motion as to all four moving
defendants.

### 1. Standing

The government contends that 21 U.S.C. § 853(h) deprives defendants of standing to file this motion because that statute speaks in terms of third parties— not defendants—applying for a stay of the sale or other disposition of forfeited property. *See Response,* Dkt. 1948, at 2-4. The relevant verbiage is shown here:

> Upon application of *a person*, *other than the defendant or a person acting in concert with him or on his behalf*, the court may restrain or stay the sale or disposition of the [forfeited] property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the applicant demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm, or loss to him.

21 U.S.C. § 853(h) (emphasis added).

The Court has previously rejected the government's argument, *see United States v. Sperow*, No. 1:06-cr-00126, 2011 WL 3837283, at *2 (D. Idaho Aug. 29, 2011), and will do so again here, for the same reasons. As the Court has explained,

> Rule 32.2 does not specifically exclude a defendant from seeking a stay. Courts have rejected government claims that § 853(h) precludes standing, citing the Rules Enabling Act, which provides that "all laws in conflict with the federal rules of procedures 'shall be of no further force or effect after such rules have taken effect.'" *See United States v. Riedl*, 214 F. Supp. 2d 1079, 1082 (D. Haw. 2001) (citing *United States v. Bachner*, 741 F. Supp. 221 (S.D. Fla.1990)). *See also United States v. Quinones*, No. 06–CR–845(S–2)(FB), 2009 WL 4249588, at *1–2 (E.D.N.Y. Nov. 25, 2009) (same); *United States v. Peters*, No. 03–CR–211(1)S, 2011 WL 1869029 (W.D.N.Y. May 13, 2011) (addressing defendant's motion to stay on the merits without addressing standing issue).

*Id.*

## 2. The Merits

Turning to the merits, "'the law governing when a district court should exercise its discretion to stay a forfeiture order has not been extensively developed.'" *United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016) (citation omitted). The parties do not point the Court to any Ninth Circuit authority discussing how district courts might exercise their discretion relative to staying forfeiture orders. Courts around the nation have taken varied approaches, however, and many consider these four factors: (1) the likelihood of success on appeal; (2) whether the forfeited asset is likely to depreciate over time; (3) the forfeited asset's intrinsic value to defendant (*i.e.*, the availability of substitutes); and (4) the expense of maintaining the forfeited property. *See, e.g., United State v. Dong*, 252 F. Supp. 3d 447 (D.S.C. 2017) (citing *United States v. Ngari*, 559 Fed. App'x 259 (5th Cir. 2014)); *United States v. Peters*, 784 F. Supp. 2d 234, 235 (W.D.N.Y. 2011); *United States v. Riedl*, 214 F. Supp. 2d 1079, 1082 (D. Haw. 2001).

In their brief motion, defendants do not address these factors. Instead, they incorporated arguments made in other briefs—none of which addressed these factors. The government addressed the four enumerated factors but at a relatively high level of generality. For example, in discussing storage costs, the government did not give any specifics, instead generally arguing that it is incurring "substantial," daily storage costs for the seized tangible property, including the

vehicles. Dkt. 1948, at 4. As for potential depreciation of assets, the government simply argued that "[a]lready seized and forfeited property must be liquidated to prevent further costs and depreciation." *Id.* at 3.

The upshot is that the Court is left to decide whether to stay enforcement of the forfeiture orders on a thin set of briefs, without any specifics as to the current value of seized real or personal property, the depreciation (or appreciation) as to any given asset, or the precise storage costs for any given item. Nobody has walked through the assets, one by one, and discussed how the four factors identified above balance. The Court will therefore decide the issue at a high level of generality. The Court will also apply common sense. For example, it's common knowledge that most vehicles are depreciating assets whereas most real property tends to be an appreciating asset, at least over the long haul.

With these general notions in mind, the Court will turn to the four factors identified above, beginning with the first factor—likelihood of success on appeal. The Court finds that this factor weighs slightly in favor of a stay. The Court cannot go so far as to say that the defendants are likely to prevail on appeal. But as the Court previously found, the defendants have raised substantial questions on appeal which, if they are successful, may require reversal or a new trial.

The next three factors all seem to contemplate a physical asset, as they speak to things like the depreciation, maintenance and storage costs, and the "intrinsic

value" of the property to the defendant. For that reason, the Court will divide its analysis, first discussing forfeiture of physical assets and then discussing bank accounts and cash. As detailed in the charts above, the physical assets at issue include five motor vehicles, real property, jewelry, and some silver (a bar and several coins).

      *a.  Motor Vehicles*

The Court will begin with the vehicles. As noted, the government reports that it is accruing storage fees daily. Defendants do not directly address the reported costs of storing the vehicles (other than to point out that the government did not specify the amount of the claimed storage fees), but they argue that "luxury vehicles that are maintaining their current mileage" will likely increase in value, rather than depreciate. *See Reply*, Dkt. 1953, at 3. They specifically point to the Harley Davidson motorcycle, stating that "[a] quick Google search of Harley Davidson motorcycles, for examples, reveals that the bikes are famously known for holding their value." *Id.* No defendant, however, has argued that any particular vehicle has intrinsic value to them.

The Court is not persuaded that any of the listed vehicles will appreciate in value during the pendency of the appeal. At best, the vehicles may hold their value. The problem, however, is that storage costs are accruing. Granted, the government has not stated the specific amount of the storage costs. *See Reply*, Dkt. 1953, at 3

(observing that while the Government "makes much of the costs incurred in storing the seized property" it has nevertheless failed to reveal what these storage costs are). But it certainly stands to reason that there are *some* storage costs accruing. Under these circumstances, the Court finds that factor two (related to depreciation) is neutral, while factors three and four (storage costs and intrinsic value) weigh against a stay.

Weighing the four relevant factors, the Court finds that the scales tip in favor of allowing the government to liquidate the vehicles. Accordingly, the Court will deny the stay motion as to four of the five vehicles listed in the chart above (the 2012 Jeep, the 2015 Ford, the 2016 Harley Davidson, and the 2010 Land Rover). The Court will grant the motion as to the 2016 Lexus because a third party (acquitted Defendant Natalie Babichenko) has filed a claim as to that vehicle, and it makes sense to hold off until that claim has been adjudicated.

### b. *Real Property*

Moving to the real property, the parties have not specifically discussed the costs of holding any of these properties, including, for example maintenance costs or costs of paying property taxes. They also have not discussed whether these properties are appreciating or depreciating, though it seems most likely that they would have appreciated since their seizure. The defendants have also pointed out that real property is typically considered unique. Balancing these factors, the Court

finds it appropriate to stay liquidation of the real property. The Court will therefore grant the stay motion as to all real property that has been included in the forfeiture orders. Defendants will, however, be ordered not to transfer or encumber these properties (including by taking out loans against them).

### c. Bank Accounts; Cash; Jewelry; Silver

That leaves the cash, the bank accounts, the jewelry, and the silver. The Court finds that factors two and three—related to storage costs and depreciation— weigh in favor of a stay for these items. Unlike vehicles, the Court cannot imagine that it is particularly expensive to store small items like jewelry and silver. The same is presumably true for cash and bank accounts. And it's far less likely that these sorts of assets will depreciate over time. The fourth factor—intrinsic value to the defendant—would weigh against a stay as far as the cash and the bank accounts are concerned.

After having balanced all of these factors, the Court finds it is appropriate to stay execution of the forfeiture order as to the seized bank accounts, cash, silver, and jewelry. The Court will, however, make one observations regarding the seized bank accounts. As noted in the chart above, the total amount of cash in the bank accounts that were seized from the moving defendants totals over $1 million. If that cash is just sitting there in non-interest-bearing accounts, there is some lost opportunity in terms of interest. At a minimum, the Court would assume that this

money should be held in interest-bearing accounts, where that money could be earning around $30,000 to $40,000 per year given current interest rates. Under these circumstances, the Court will order the parties to meet and confer in an effort to come to an agreement as to how to maximizes the interest these accounts earn during the pendency of the appeal. If the parties are unable to reach an agreement, the Court will not take any further action. If, however, the parties are able to come to an agreement, they should file a stipulation or joint motion for the Court's consideration. The parties should bear in mind that the Court's general intent with respect to the cash assets is to preserve the status quo and maximize the return on the banks accounts during the pendency of the appeal.

## ORDER

**IT IS ORDERED that:**

(1) Defendant Pavel Babichenko's "Notice of Joinder to Motion" (Dkt. 1949), which was docketed as a motion, is **GRANTED.**

(2) Defendants' Motion for Stay of Financial Penalties Pending Appeal (Dkt. 1928) and their Motion to Stay Enforcement of Financial Penalties (Dkt. 1933) are **GRANTED IN PART and DENIED IN PART** as follows:

   a. Defendants' request to stay payment of their restitution and fine obligations is PARTLY STAYED in that the Court will not order defendants to pay their fines and restitution obligations in one lump

sum. Instead, the Court will order defendants to comply with a

payment schedule as follows:

b. Beginning on **March 3, 2025**, the moving defendants shall begin

making monthly payments on their restitution and fine obligations.

Each monthly payment thereafter shall be due on the first business

day of the month. The amount of the monthly payment shall be as

shown in the chart below, although the final payment may be adjusted

downward by a few cents, if applicable, as explained above:

| Defendant | Monthly Payment |
|---|---|
| Pavel Babichenko | $11,704.87 |
| Piotr Babichenko | $ 7,055.13 |
| Timofey Babichenko | $ 7,096.79 |
| Mikhail Iyerusalimets | $ 1,244.36 |

c. All payments shall be deposited into the Court's registry and shall not

be disbursed by the Clerk absent a Court order.

d. The motion to stay execution of the forfeiture order is **DENIED** to the

extent the Court will allow liquidation of these four vehicles: (1) the

2012 Jeep; (2) the 2015 Ford F-150; (3) the 2016 Harley Davidson;

and (4) 2010 Land Rover. The government is directed to provide the

Court with an accounting (including, at a minimum, the sales price

and the net proceeds) after these vehicles have been liquidated.

e. The motion to stay execution of the forfeiture orders is **GRANTED** in

all other respects.

f.   Defendants shall refrain from transferring or otherwise encumbering

all assets listed in the forfeiture orders on file, including by taking out

loans against these assets. *See* Dkts. 1838, 1874, 1912.

g.   The parties shall promptly notify the Court when the appeal in this

matter has been resolved.

(3)  **IT IS FURTHER ORDERED that** the parties are directed to meet and

confer regarding the forfeited bank accounts, as explained above.

DATED: February 4, 2025

B. Lynn Winmill
U.S. District Court Judge